**Gregory Shawn HENLEY, Appellant**

v.

**The STATE of Texas**

NO. PD–0257–15

Court of Criminal Appeals of Texas.

DELIVERED: June 29, 2016

78 

William S. Harris, Fort Worth, for Appellant.

John R. Messinger, Assistant State Prosecuting Attorney, Lisa McMinn, State's Attorney, Austin, for State of Texas.

## OPINION

Richardson , J., delivered the opinion of the Court in which Meyers, Johnson, Keasler, Alcala, and Yeary, JJ. joined.

Appellant, Gregory Shawn Henley, was found guilty by a jury of misdemeanor assault causing bodily injury to a family member.[1] He was sentenced to confinement for 200 days in the Tarrant County Jail. Appellant complained on appeal that the trial court excluded evidence that appellant sought to introduce in support of his claim of defense of a third person.[1] Specifically, appellant claimed that he was justified in pulling his ex-wife out of her car by her hair, punching her in the face several times (resulting in two severe black eyes and several cuts and bruises), and hitting her head against the concrete driveway, because he was concerned that his ex-wife was not a fit parent and wanted to protect his two sons from the possibility of being harmed at some future time by

---

1. TEX. PENAL CODE § 9.33.

people who were not present at the time of the assault.

The Second Court of Appeals concluded that appellant should be able to present evidence in support of this purported justification defense. We disagree. Appellant's claim in no way constitutes a valid claim of defense of a third person under Section 9.33. Even if appellant's concerns were legitimate, the evidence he sought to introduce did not give rise to any type of justification defense. Appellant's ex-wife posed no immediate threat to his sons. In fact, *no one* posed an immediate threat to his sons. The evidence appellant sought to introduce in support of his purported justification defense was irrelevant. Evidence that is not relevant is inadmissible. The trial court judge did not abuse her discretion by excluding it. We reverse the decision of the court of appeals and reinstate appellant's conviction.

## BACKGROUND

Appellant and his ex-wife, Brandy Gillingham, were engaged in a custody battle. The family court had issued a temporary order, providing that their two sons would live with appellant while their permanent custody case was pending. The order specified that Brandy was to have supervised visitation on the weekends and that the visits were to be supervised by Brandy's mother or father.[2]

On March 3, 2012, Brandy and her mother went to appellant's house to pick up the children for her court-ordered supervised visitation. When they arrived to pick up the boys, Brandy would not speak with appellant other than to tell him to bring the children to the car. Appellant refused to get the boys, so Brandy called 911, claiming that appellant was violating

the court order that allowed her visitation. That prompted appellant to bring the boys to the car and put them in the backseat. Brandy was sitting in the driver's seat of the car waiting on the police to arrive[3] when appellant attempted to force the car door open. He broke the car door's handle. When Brandy opened the car door and leaned over to retrieve the handle, appellant pulled Brandy out of the car by her hair, hit her in the face with his fists, and knocked her head against the concrete driveway. He also shoved Brandy's mother, who fell backwards onto the concrete, suffering a broken arm. Appellant then got in his car and drove away.

At trial, appellant's justification defense was that he believed he needed to assault Brandy to protect his sons. Appellant's counsel requested that he be allowed to put forth evidence to support his claim of defense of a third person. He asked the court to permit him to cross-examine Brandy about allegations of misconduct by Douglas Gillingham, whom she married after she divorced appellant, and allegations of sexual abuse of the two boys by Douglas' eleven-year-old former stepson. Appellant also sought to introduce his own testimony that, if Brandy left his house with their sons, he believed she would allow the boys to come in contact with Douglas and the former stepson, and this would put them in a dangerous situation. Appellant asserted that this evidence supported his claim of defense of a third person, and the jury should have been allowed to consider it. The trial court ruled that the evidence was inadmissible.

## ANALYSIS

We review a trial judge's decision to admit or exclude evidence under an

**2.** The terms of the family court order were not in dispute.

**3.** The 911 operator told Brandy "to stay until the police officer arrived."

abuse of discretion standard. A trial judge abuses her discretion when her decision falls outside the zone of reasonable disagreement.[4] Before a reviewing court may reverse the trial court's decision, "it must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree."[5]

■ Finding a piece of evidence to be relevant is the first step in a trial court judge's determination of whether the evidence should be admitted before the jury.[6] Even though our rules "favor the admission of all logically relevant evidence for the jury's consideration,"[7] the trial court judge is still in charge of making the threshold decision as to whether evidence is relevant or not, and her decision will not be disturbed on appeal unless it is "clearly wrong."[8]

■ A defendant's right to present evidence relevant to a valid justification defense should not be confused with a defendant's right to present his case-in-chief. A defendant has the right to put on his case-in-chief, but that right is not without limitations. A defendant does not have an unfettered right to present evidence that has no relevance. In citing to United States Supreme Court case law, this Court has held that "[a] defendant has a fundamental right to present evidence of a defense as long as the evidence is relevant and is not excluded by an established evidentiary rule."[9] Only relevant evidence is admissible, and the trial court judge has the discretion to exclude irrelevant evidence.[10]

■ Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.[11] Thus, to be relevant, evidence must be material and probative.[12] For evidence to be material, it must be shown to be addressed to the proof of a material proposition, which is "any fact that is of consequence to the determination of the action."[13] "If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial."[14] For evidence to be probative, it "must tend to make the existence of the

4. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim.App.2003) (citing to *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991) (op. on reh'g)); *Torres v. State*, 71 S.W.3d 758, 760 (Tex.Crim.App.2002).

5. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim.App.2008).

6. *Montgomery*, 810 S.W.2d 372, 375 (Tex. Crim.App.1991) (op. on original submission) ("Finding a piece of evidence to be 'relevant' is the first step in a trial court's determination of whether the evidence should be admitted before the jury as '[a]ll relevant evidence is admissible ... Evidence which is not relevant is not admissible.' ").

7. *Id.*

8. *Taylor*, 268 S.W.3d at 579.

9. *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim.App.2001) (citing to *Chambers v. Missis-* *sippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)).

10. TEX. R. EVID. 402 ("Irrelevant evidence is not admissible.").

11. TEX. R. EVID. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

12. *Miller*, 36 S.W.3d at 507.

13. *Id.* (citing to 1 Steven Goode et al., *Texas Practice: Guide to the Texas Rules of Evidence: Civil and Criminal* § 401.1 (2d ed. 1993 & Supp. 1995)).

14. *Id.*

fact 'more or less probable than it would be without the evidence.' " [15]

"Relevancy is defined to be that which conduces to the proof of a pertinent hypothesis—a pertinent hypothesis being one which, if sustained would logically influence the issue." [16] Thus, if no "issue" in the case could be influenced by the proffered evidence, then that evidence is irrelevant and thus inadmissible. "Relevancy is not an inherent characteristic of any item of evidence but exists as a relation between an item of evidence and a matter properly provable in the case." [17] A "fact of consequence" includes either an elemental fact or an evidentiary fact from which an elemental fact can be inferred.[18] "An evidentiary fact that stands wholly unconnected to an elemental fact, however, is not a 'fact of consequence.' " [19]

## A. The Testimony That Was Excluded

The State filed a motion in limine to exclude certain evidence that appellant wanted admitted. To assist in making her pretrial ruling, the trial court judge asked to hear Brandy's testimony outside the jury's presence. She granted the State's motion in limine, but agreed to reconsider her ruling when Brandy took the stand during trial. After Brandy testified, the judge excused the jury, and Brandy again gave testimony outside the jury's presence. The trial judge stood by her ruling and did not allow the evidence to be admitted. After the State's last witness, appellant asked to present the evidence through his own testimony. The judge agreed to hear what appellant had to say on the stand outside the presence of the jury. The trial court judge was not convinced and again denied admission of the requested evidence. In order to assess whether the trial court judge abused her discretion in excluding the evidence, it is important to know exactly what that evidence was.

### 1. Brandy's Testimony Before Trial

Before trial began, on direct examination by the State, Brandy testified that there was a temporary court order in place allowing her to have supervised visits with her two sons at her mother's house from Saturday at 9:00 a.m. to Sunday at 6:00 p.m. She explained that the court order precluded her husband, Douglas Gillingham, from coming in contact with the children. Brandy testified that she always followed that order because she knew she could lose custody of her children if she disobeyed it. Brandy said that, when she and her mother arrived at appellant's house to pick up her children, appellant refused to get them; so Brandy called 911 "to have an officer come out to make sure [she got her] children." She then described how appellant assaulted her.

Appellant's counsel then cross-examined Brandy regarding why her visits had to be supervised:

Q. Why was the visitation supposed to be supervised that day?

A. Due to the fact that I was still with Douglas Gillingham.

Q. What does Douglas Gillingham have to do with your visitation being supervised that day?

15. *Id.*

16. *Montgomery,* 810 S.W.2d at 376 (citing to *Waldrop v. State,* 138 Tex.Crim. 166, 133 S.W.2d 969, 970 (1940)).

17. *Id.* at 375 (citing to Advisory Committee's Note to FED. R. EVID. 401).

18. *Rankin v. State,* 974 S.W.2d 707, 710 (Tex. Crim.App.1996) (op. withdrawn in part on reconsideration of other grounds).

19. *Id.*

**A.** Due to the fact that his former step-son sexually assaulted my children.

\* \* \*

**Q.** And was [Appellant] aware of that?

**A.** Yes. . . . There was [also] an allegation that . . . Douglas choked my children.

The State objected to any mention of Douglas Gillingham or his former stepson, since neither was present at the time of the offense, arguing that anything regarding Douglas Gillingham or his former stepson occurred at least seven months before this incident, and there had been no proof of any contact between the children and Douglas Gillingham or his former stepson since the CPS investigation and family court visitation order. In fact, by the time of trial, all restrictions preventing contact between Douglas and the two boys had been lifted. CPS found that the choking allegations against Douglas were not true. The prosecutor argued that any testimony of alleged prior wrongdoing by the former stepson and/or Douglas Gillingham was not relevant, and even if it were relevant, it would be substantially more prejudicial than probative.

The trial court ruled that appellant's counsel could establish only that Brandy was allowed supervised visitation, that the visitation would be for specific times, and that Brandy's mother had to be present. The court would not allow appellant's counsel to question Brandy regarding why there was supervised visitation.

**2. Brandy's Testimony During Trial**

After Brandy testified before the jury, appellant's counsel renewed his request to introduce evidence related to Douglas Gillingham and his former stepson as forming the basis for appellant's concerns for his sons' safety. The court allowed appellant's counsel to question Brandy outside the presence of the jury:

**Q.** Ms. Gillingham, it's true that [Appellant] was trying to talk to you about your sons on March 3rd? . . . [Appellant] acted like the boys were not safe going with you?

**A.** That was his assumption.

\* \* \*

**Q.** . . . The [family] court believed you had to be supervised.

**A.** That is true.

**Q.** Why did the court believe you had to be supervised?

**A.** Because I would not stop seeing Mr. Gillingham.

**Q.** And it's Mr. Gillingham that the boy said choked him—choked them?

**A.** Correct.

**Q.** So the court wanted you to stop seeing this man, based on allegations that your sons had made about [Douglas] abusing them?

**A.** Correct.

**Q.** And you continued to see this man?

**A.** Correct.

**Q.** Continued to have your boys around this man?

**A.** No.

**Q.** Okay. You told the court that you had moved out or weren't living with Douglas; is that right?

**A.** Correct.

**Q.** That wasn't true; you were still living with Douglas.

**A.** Correct.

\* \* \*

**Q.** While [the boys] were in your care previously, they had been sexually abused.

**A.** Correct.

**Q.** They had been sexually abused by Douglas Gillingham's son . . .

**A.** Correct.

Q. And it would have been in your care that Douglas would have abused them, assuming that allegation was true.

A. Correct.

Q. Now, is there any reason that your boys would have lied about Douglas Gillingham abusing them?

A. No.

Q. Was [appellant] present in court when you told the family law judge that you weren't living with Douglas Gillingham?

A. Correct.

Q. And so he became aware that you were misleading the court in that respect?

A. Correct.

During appellant's voir dire examination of Brandy, the court permitted the State to re-direct:

Q. Ms. Gillingham, those choking allegations against Douglas, when were they?

A. In August of 2011.

Q. Was CPS conducting an investigation?

A. Yes.

Q. What was the result of the investigation against Douglas?

A. They found it not to be true.

Q. Were there any further allegations after that?

A. No.

Q. That court order, it specifically says [Douglas' former stepson] cannot be around your two children, correct?

A. Correct.

Q. Are your children around [Douglas' former stepson] at any time?

A. No.

Q. Have they been since that order has been in place?

A. Correct.

\* \* \*

Q. During the period of time between August 2011 and March 3rd, 2012, did Douglas Gillingham have any contact with [your sons]?

A. No.

Q. Was that by court order?

A. Yes.

Q. During the time you were with [your sons], between August 2011 and March 3rd, 2012, were all those times supervised?

A. Correct.

Q. What would have been the result of Douglas Gillingham being near your children during that time?

A. I would have potentially lost custody.

Q. Do you want to lose custody of your children?

A. No.

The trial court judge then conducted her own questioning of Brandy to clarify whether any of this evidence had relevance to any issue raised in the case:

THE COURT: Between August 2011 and March 3rd [2012] . . . you had supervised visitation with your two sons?

THE WITNESS: Correct.

THE COURT: And was Douglas Gillingham present during those supervised visitations?

THE WITNESS: No, ma'am.

THE COURT: And on March the 3rd, the day of this offense, was Mr. Gillingham at your home?

THE WITNESS: No.

THE COURT: Is that where you were taking the boys?

THE WITNESS: No.

THE COURT: Where were you taking the boys?

THE WITNESS: To my mother's home.

THE COURT: Once again, just to make sure I have this straight, the August 2011 CPS investigation was started because Mr. Henley called CPS about the allegation that Douglas Gillingham was choking [your son].

THE WITNESS: Correct.

THE COURT: And then the result of the CPS investigation was what?

THE WITNESS: It came out that [Douglas' former stepson] was sexually abusing both of my children.

THE COURT: And what about the allegation of choking?

THE WITNESS: It became—it was found not to be true.

Appellant's counsel argued that the court should admit all of the evidence related to the alleged misconduct by Douglas and his former stepson because it showed that appellant had "a legitimate concern" for the safety of his children, and Brandy's "lying to the Court create[d] a legitimate concern about her following the court orders." Appellant's counsel also argued, in the alternative, that testimony elicited by the State from Brandy's mother that appellant had been irate left a false impression about appellant's state of mind, and he should be allowed to explain why he may have been acting irate.

The State responded that the allegations of abuse of the boys arose in August of 2011. Beyond that, there were no further allegations of abuse reported. Since the initial report was made to CPS, appellant never made any subsequent calls to CPS or to the police. He did not call the police or CPS on the day of the offense, the day before the offense, or the week before the offense. The trial court ruled that the proffered testimony would not come in.

### 3. Appellant's Testimony

After the State finished presenting its witnesses, but before resting, the trial court allowed appellant to testify outside the presence of the jury "for the limited purpose of allowing the court to hear evidence to reconsider its ruling."

Q. Did you feel that if [Brandy] took your sons that your sons would be in imminent danger or that she would be placing your sons in a dangerous condition?

A. Yes, sir.

Q. Is that the reason for your actions on March 3rd?

A. I believe so, yes.

Q. Now, explain to the court what dangerous condition or danger you perceived on March 3rd.

A. My ex was continually not paying attention to what was going on to my boys.... Her taking them back to see—putting them back in the situation that they found themselves in in August of 2011.

Q. And was there a court order in place that would forbid her from doing that?

A. Yes, sir.

Q. And did you believe she would violate that court order?

A. Yes, sir.

Q. And when she came to your house to pick up the boys, did you believe it was her intention to violate that court order?

A. Yes, sir.

Q. Now, you said that the conditions— or explain to the court what it is that happened to the boys that gave you such concern.

A. The week prior to her showing up to pick up the boys, we were in counseling, and I had [my son] on my arm because he wanted me in the counseling with him to go through everything. And throughout the—[my son] ... was explaining [how Douglas' former stepson] would make him and his brother sleep with each other in front of him and—

Q. Was that new information?

A. That was new at that time.

 * * *

Q. After the boys were in the car, did you continue to try to talk to Brandy and her mother ... ?

A. Yeah. I started pleading with them, and I went over the whole [the boys know] all the ordeal with how it all turned out, how this wasn't a one-time deal, that [my son] had said it happened in the middle of the day while you were watching TV, how can you do this, how can you continue on this path.

Q. And [Brandy's mother], that was there, was she responsive to what you were telling?

A. No. She just totally ignored it like it wasn't anything.

Q. But she was the person what was supposed to be supervising the visits?

A. Yes.

Q. And so did that contribute to your belief that they were going to put your boys in a dangerous situation?

A. Yes.

Q. Do you believe that your children being in their mother's care was a danger to them?

A. Yes.

 * * *

Q. And your actions on March 3rd were to defend your boys from what you perceived as an imminent threat to the boys?

A. Yes.

The trial court judge ruled that this evidence was not relevant to the issue of defense of a third person. Because the trial court judge would not allow any of the above testimony to come into evidence during guilt-innocence, appellant decided to not testify in front of the jury.[20]

**B. The Proffered Evidence Was Neither Material Nor Probative**

As noted above, in deciding whether evidence is relevant, the proper inquiry is whether the evidence is helpful in determining the truth or falsity of any fact that is of consequence in the case.[21] To decide whether a fact is "of consequence" to the case, we must look at appellant's purpose for offering the evidence and decide whether that purpose can be achieved with such evidence. Appellant's stated purpose for offering the testimony set out above was to support his claim of defense of a third person.

Under Texas Penal Code Section 9.33, a person is justified in using force against another to protect a third person if: (1) under the circumstances as the actor reasonably believes them to be, the actor would be justified in using force to protect himself against the unlawful force he reasonably believes to be threatening

20. Appellant chose to go to the court for punishment. Both sides re-offered all of the evidence from guilt-innocence, including the proffered evidence heard outside the presence

of the jury. The court admitted all of this evidence for consideration on punishment.

21. *Montgomery*, 810 S.W.2d at 376.

the third person he seeks to protect, and (2) the actor reasonably believes that his intervention is immediately necessary to protect the third person.[22] In other words, a defendant is justified in defending a third person if, under the circumstances as the defendant reasonably believes them to be, the third person would be justified in defending himself.[23]

 Both self-defense and defense of a third person require that there be a reasonable belief in the immediate need to act. Under a claim of self-defense, a person must reasonably believe that the use of force is "immediately necessary" to protect himself against the other's use or attempted use of unlawful force. Under a claim of defense of a third person, a person must reasonably believe that his intervention is "immediately necessary" to protect the third person. The term "immediately necessary" is not defined in either statute. Terms not defined in a statute are to be given their plain and ordinary meaning.[24] Words with meanings so well known as to be understood by a person of ordinary intelligence are not to be considered vague and indefinite.[25]

 Although this Court has not examined the immediacy requirement in the context of defense of a third person, we have addressed it under the justification defense of necessity. Under Texas Penal Code Section 9.22, unlawful conduct is justified if the actor reasonably believes the conduct is immediately necessary to avoid imminent harm.[26] "Imminent" has been defined as "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near."[27] Thus, imminent harm is harm that is ready to take place—harm that is coming in the very near future. Logically, then, if conduct is "immediately necessary" to avoid harm that is imminent, that conduct is needed right now. The justification defense of necessity applies when action is needed "immediately" (i.e., now) to avoid "imminent" harm (i.e., harm that is near at hand).[28] Applying this interpretation in

22. Tex. Penal Code § 9.33.

23. *Morales v. State*, 357 S.W.3d 1, 4 (Tex. Crim.App.2011) (citing to *Hughes v. State*, 719 S.W.2d 560, 564 (Tex.Crim.App.1986)).

24. *See Watson v. State*, 369 S.W.3d 865, 870 (Tex.Crim.App.2012) (citing to *Floyd v. State*, 575 S.W.2d 21, 23 (Tex.Crim.App.1978)).

25. *Id.*

26. Tex: Penal Code § 9.22 ("Conduct is justified if: (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear."). Appellant did not raise the justification defense of necessity. However, for the same reasons discussed herein, the excluded evidence would not have been relevant to that defense either. The asserted harm that appellant believed would be inflicted on his sons by Douglas or his former stepson was not "imminent." Appellant's concern regarding his sons' exposure to Douglas or his former stepson was certainly understandable, may have been valid, and the harm to his sons at the hand of Douglas or his former stepson was *possible*. But it was not immediate, certain, or imminent. Therefore, the trial court's exclusion of the evidence would not have been erroneous even if appellant had argued that the evidence was relevant to the justification defense of necessity.

27. *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim.App.1989) (citing to out-of-state authorities and Black's Law Dictionary 676 (rev. 5th ed. 1979)).

28. *See e.g., Dewalt v. State*, 307 S.W.3d 437, 454–55 (Tex.App.—Austin 2010, pet. ref'd.) (Accused of kidnapping her son to protect him from his father, "Dewalt assert[ed] that

the context of self-defense and defense of a third person, force that is "immediately necessary" to protect oneself or another from a person's use of unlawful force is force that is needed at that moment— "when a split second decision is required."[29]

Brandy acknowledged outside the presence of the jury that she had misrepresented to the family court judge that she was not living with Douglas. This is a disturbing fact of which appellant was aware when he assaulted Brandy. Appellant also gave compelling testimony about why he did not trust Brandy to watch over the boys and why her ignoring his concerns was making him so angry. However, even if all of this evidence showing that Brandy was an unfit parent were true—Brandy's lack of truthfulness to the family court judge, her apparent lack of communication with appellant about his concerns for the boys, and her failure to take the boys' accusations against Douglas and the former stepson seriously—appellant still was not justified in assaulting Brandy. This proffered evidence was not relevant to defense of a third person because none of it showed that appellant had to make the split-second decision to assault Brandy in order to keep his boys from immediately being harmed then and there. Since neither Douglas nor his former stepson were

present at the time of the assault, for the proffered evidence to be material to defense of a third person, the evidence would have had to show that assaulting Brandy was immediately necessary to protect his children against Brandy's or her mother's use or attempted use of unlawful force against the children. Brandy's taking her children for a weekend supervised visit, which was undisputedly allowed by a family court order, was not unlawful force against the children. There was no evidence suggesting that either Brandy or her mother was threatening an immediate attack upon the boys. Appellant never claimed that Brandy and/or her mother were about to harm the boys, and none of the excluded evidence (or evidence from any source) indicated that the boys were in any immediate danger from Brandy or her mother. More importantly, the excluded evidence did not show that Douglas or his former stepson was about to come in contact with the boys or that such contact was imminent. The proffered evidence pertained only to what appellant feared might happen based on what he had been told a week before, which is not a fact of consequence to defense of a third person. Even if admitted, the evidence could not support the claim that appellant acted in defense of a third person because the harm from which appellant was purportedly protect-

she faced 'imminent harm' beginning when the jury rendered its verdict awarding custody of J.M.D. to Michael.... Whatever threat of harm that Michael could have presented to J.M.D. from Dewalt's perspective was not 'something that [was] going to happen now.' ... In short, these undisputed facts negate, as a matter of law, the sort of 'emergency situation' necessitating a 'split-second decision made without time to consider the law' that distinguishes 'imminent harm' and can raise a necessity defense."). In *Schier v. State*, 60 S.W.3d 340, 344 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd), an interference with child custody case, the court of appeals held that the defendant was not entitled to present

evidence of the negative conditions in the mother's home to support his necessity defense because such evidence did not establish imminent harm. Although acknowledging that the environment appellant sought to avoid for his daughter was deplorable, the court held that his testimony explaining his reasoning did not require him to act immediately.

29. *Smith v. State*, 874 S.W.2d 269, 273 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) ("immediately necessary" means "when a split second decision is required") *abrogated on other grounds by Clewis v. State*, 922 S.W.2d 126 (Tex.Crim.App.1996).

ing his children was neither immediately present nor certain to occur in the immediate future.

Brandy had a valid court order allowing her to take her sons for a supervised visit. If appellant had concerns about Brandy taking the boys on her supervised visitation, his remedy was not to assault Brandy in order to prevent her from taking their sons just because he feared she might allow them to come in contact with Douglas (or his former stepson). Appellant had other legal remedies that were available to him. There is no evidence that, during the week prior to the assault, appellant did anything to prevent Brandy's supervised visit, such as seeking a temporary restraining order, so that his concerns could be addressed. Other options were available to appellant to protect his sons from such anticipated future danger. In fact, Brandy had already put in a call to 911 when appellant refused to bring his sons to the car. She had been told to wait for the officer, and appellant could have voiced his concerns to the police officer at that time. Instead of recognizing that Brandy's 911 call would have given him an opportunity at that moment to seek protective assistance on his sons' behalf, appellant put his sons in Brandy's car (thereby creating in the first place what he claimed was the immediate "danger"), then he physically assaulted Brandy, and then he got into his car and drove away, leaving his sons behind. Appellant's explanation of why he acted this way may have made his expression of anger more understandable, but it was not pertinent to a valid justification defense. It was not relevant to any matter "properly provable" in the case.[30]

If we were to hold that appellant was entitled to present this evidence to the jury, we would be recognizing that appellant was in fact claiming a valid justification defense and that the proffered evidence was supportive of that claim. That decision could have far-reaching evidentiary ramifications because it not only eliminates the relevancy requirement set out in Rules 401 and 402, but it also eliminates the immediacy requirement set out in Sections 9.31 and 9.33. For example, if a person has a concern that someone might hurt him or another at some future point, then could that person be justified in striking a preemptive first blow to prevent that anticipated future danger? Appellant's proffered evidence is relevant only to the adage that "the best defense is a good offense." But bellicose adages are not part of Texas or United States jurisprudence. In fact, our decision in this case is consistent with case law decided over one hundred years ago. In *Andersen v. United States*,[31] a case decided in 1898, the United States Supreme Court addressed issues that are remarkably similar to those before us.

> It is true that a homicide committed in actual defense of life or limb is excusable, if it appear [*sic*] that the slayer was acting under a reasonable belief that he was in imminent danger of death or great bodily harm from the deceased, and that his act in causing death was necessary in order to avoid the death or great bodily harm which was apparently imminent. But where there is manifestly no adequate or reasonable ground for such belief, ... the plea of self-defense cannot avail. ...

> According to his own statement, Andersen, after he had shot the captain, thought about the mate, armed himself

---

**30.** *Montgomery*, 810 S.W.2d at 375 (citing to Advisory Committee's Note to Fᴇᴅ. R. Eᴠɪᴅ. 401).

**31.** 170 U.S. 481, 18 S.Ct. 689, 42 L.Ed. 1116 (1898).

with the captain's pistols, went in search of his victim, and finding him aloft on the mainmast, at work, called him down, or, seeing him coming down, awaited him, and shot him. He was not only the aggressor, but the premeditated aggressor. The captain being dead, he knew the mate would assume command, and that it would be his duty to arrest him and take him ashore for trial. The imminent danger which threatened him was the danger of the gallows. The inference is irresistible that to avert that danger he killed the mate, cast the bodies into the sea, burned the ship, and took to the open boat. There can be no pretense that he was acting under a reasonable belief that he was in imminent danger of death or great bodily harm at the hands of the mate.

...The case, as Andersen's testimony made it, afforded no basis for the introduction of evidence of prior provocation, or even of injuries previously inflicted, for no overt act on the mate's part provoked the evil intent with which Andersen sought him out on this occasion. Such evidence would not have been relevant, in view of the circumstances, as tending either to make out self-defense, or to reduce the grade of the crime. We are not insensible to the suggestion that persons confined to the narrow limits of a small vessel, alone upon the sea, are placed in a situation where brutal conduct on the part of their superiors, from which there is then no possible escape, may possess special circumstances of aggravation. But that does not furnish ground for the particular sufferer from such conduct to take the law into his own hands. Nor for the suspension of those general rules intended for the protection of all alike, on land or sea.

Complaint is made because the court refused to allow a witness to testify as to the general reputation of the captain. If there had been any adequate basis for the contention that Andersen killed the mate in self-defense, by reason of a reasonable belief in imminent danger from him, evidence of his character for ferocity, brutality, and vindictiveness might have been admissible. But, as the record stood, the character of the captain could have no legal bearing on the issue of the guilt of the accused of the murder of the mate.[32]

The same requirement for immediacy still applies. The same basic rule of relevancy still applies. To be justified in using force to protect a third person, the third person had to have been in immediate danger. An imagined future scenario is not enough. Appellant's anticipation that there might be future harm to his sons does not fit into the legal justification of defense of a third person. Thus, if the proffered evidence would not have supported appellant's claimed justification defense, then there was no valid reason to admit the evidence in the first place. Appellant's proffered evidence was not evidence of a justification defense, so he did not have an absolute right to present it to the jury. Because Douglas and his former stepson were not present, they did not pose an immediate danger to the boys. And, the proffered evidence did not tend to make the likelihood that either Brandy or her mother was about to endanger the boys any more or less probable. Therefore, the evidence was not material, it was not probative, and thus, it was not relevant. The trial court judge's decision to exclude the evidence was not so clearly wrong as to be outside the zone of reason-

---

**32.** 170 U.S. at 509–10, 18 S.Ct. 689 (citations omitted).

able disagreement. There was no abuse of discretion.

## C. The Proffered Evidence Was Inadmissible Under Rule 403

An evidentiary ruling will be upheld if it was correct on any theory of law applicable to the case.[33] We hold that, even if the proffered evidence had been relevant, the trial court judge had the authority under Rule 403[34] to exclude it.[35] In determining whether it would have been proper to exclude the evidence under Rule 403, we balance the claimed probative force of the proffered evidence along with appellant's asserted need for that evidence against (1) any tendency of the evidence to suggest that the case would be decided on an improper basis; (2) any tendency of the evidence to confuse or distract the jury from the main issues; (3) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence; and (4) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.[36]

The first three factors support the trial court's decision to exclude the evidence. Appellant claimed that the evidence was probative of his perception that the boys

were in immediate danger. However, the excluded testimony did not reflect an immediate danger. Because the evidence did not pertain to any valid defensive theory in the case, it had no purpose. Admission of this evidence would only have served to confuse and distract the jury from the main issues, and would have allowed them to give undue weight to this evidence for no purpose other than, possibly, jury nullification. Thus, the proffered evidence was inadmissible under Rule 403. The trial court's evidentiary ruling was correct under this theory as well.

## D. The Reasonableness of Appellant's Belief Was Not An Issue For The Jury

In *Hayes v. State*,[37] the trial court instructed the jury as to the justifiable use of less-than-deadly force in the context of a self-defense charge. The appellant claimed that the trial court erred by not properly instructing the jury. He asserted that the jury should have been permitted to determine whether his belief that deadly force was necessary was reasonable. The court of appeals rejected this argument, stating that there was no evidence that he was reasonably warranted in drawing a gun on his unarmed opponent.[38] This Court held that, whether a defen-

---

**33.** *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex.Crim.App.2009).

**34.** TEX.R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.")

**35.** The record does not reflect whether the trial court judge conducted a Rule 403 balancing test. However, as noted above, she did not have to do so in order for us to uphold her ruling. *De La Paz*, 279 S.W.3d at 344 ("[I]f the trial court's evidentiary ruling is

correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his right ruling.") (citing to *Sewell v. State*, 629 S.W.2d 42, 45 (Tex.Crim.App.1982) ("[W]hen a trial court's ruling on the admission of evidence is correct, although giving a wrong or insufficient reason, this Court will not reverse if the evidence is admissible for any reason.")).

**36.** *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex.Crim.App.2006).

**37.** 728 S.W.2d 804, 808–09 (Tex.Crim.App. 1987).

**38.** *Id.* at 807.

dant's belief was "reasonable" was a fact issue for the jury: "Whether the appellant's beliefs were reasonable and justifiable and whether or not the appellant used more force than necessary under the circumstances were fact questions for the jury to decide."[39]

Under a claim of defense of a third person, a person must reasonably believe that his intervention is "immediately necessary" to protect the third person.[40] If appellant had put forth evidence that, at the time he assaulted Brandy, an unlawful force was threatening his sons, then we would agree that the reasonableness of his belief that his intervention was immediately necessary to protect his sons would be an issue for the jury. However, the evidence that appellant sought to admit did not suggest that an unlawful force was at that moment threatening his sons. The evidence related to appellant's perception that his children might be in danger from a future unlawful force. Although appellant offered this evidence to show why he thought his actions were reasonable, none of the proffered testimony had any tendency to show that the children were in need of immediate protection. The proffered evidence did not relate to a properly provable defense-of-a-third-person issue because it did not pertain to whether the children were in immediate danger from an unlawful force. Thus, the reasonableness of appellant's perception was not at issue because his perception was of a scenario that, even if true, did not provide a legal justification for the assault. Therefore, *Hayes* would not apply here.

### E. *Fielder v. State* Does Not Apply

The court of appeals held that appellant was entitled to present evidence to support his claim of defense of a third person, just as the defendant was entitled to present the "battered-spouse defense" in *Fielder v. State*.[41] In *Fielder*, the appellant claimed that she killed her husband in self-defense. This Court held that, under Texas Penal Code, Section 19.06 (currently Section 38.36), evidence of facts and circumstances surrounding the killing and the previous relationship between the victim and the defendant were admissible to show the defendant's state of mind.[42] This Court also held in *Fielder* that expert testimony was admissible to show the reasonableness of appellant's apprehension of fear that the victim was about to kill her at that moment. We find the facts in *Fielder*, and, more particularly, the legal issue decided under those facts, to be distinguishable.

**39.** *Id.* at 808; *see also Granger v. State,* 3 S.W.3d 36, 39 (Tex.Crim.App.1999) (Appellant's defense was that, through mistake, he formed a reasonable belief about no one being in the car, and that mistaken fact negated the kind of culpability required for commission of murder. Citing to *Hayes* and several other cases, this Court held that whether appellant's mistaken belief was reasonable was an issue for the jury.)

**40.** The term "reasonable belief" is defined as one that would be held by "an ordinary and prudent man in the same circumstances as the actor." TEX. PENAL CODE § 1.07(a)(42).

**41.** *Henley v. State,* 454 S.W.3d 106, 115 (Tex. App.—Fort Worth 2014) (citing to *Fielder v.* State, 756 S.W.2d 309, 317 (Tex.Crim.App. 1988)).

**42.** *Fielder,* 756 S.W.2d at 321. TEX. PENAL CODE § 19.06 ("In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.") This provision has been recodified as TEX. PENAL CODE § 38.36(a). Only the words "or voluntary manslaughter" have been deleted.

The evidence proffered by the defendant in *Fielder* was relevant to her defense because of Section 19.06, and because it was relevant to her perception that she was about to be attacked. There is no corresponding statutory provision that would render the proffered evidence in this case relevant, and the evidence did not pertain to whether the boys were about to be attacked with unlawful force.

## F. Appellant Was Not Denied His Right of Confrontation

■ Appellant also argues that he was erroneously prevented from confronting the State's witnesses who painted him as an irrationally angry man. He claimed that he should have been allowed to cross examine Brandy and her mother about the new allegations that had emerged from the children's counseling session concerning abuse that had occurred during the time that Brandy had custody of the children. The appellate court agreed, holding that "denial of the right of confrontation and cross-examination is an error of constitutional magnitude." [43] It held that the trial court erred by denying appellant the right "to further show his state of mind and further develop his justification defense." [44] We disagree.

■ "[T]he Confrontation Clause occasionally may require the admissibility of evidence that the Rules of Evidence would exclude." [45] The Confrontation Clause grants a defendant the right to cross-examine the witnesses against him. [46]

Whether there has been a violation of the Confrontation Clause is determined on a case-by-case basis. [47] In determining whether evidence must be admitted under the Confrontation Clause, the trial court must balance the defendant's right to cross-examine and the probative value of the proffered evidence against the risk factors associated with admission of the evidence. [48] The trial court maintains broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. [49]

After reviewing the facts of this case, we cannot conclude that the trial court judge abused her discretion in excluding the evidence. The evidence was not probative. It did not show in any way that appellant was justified in assaulting Brandy. It wasn't even marginally relevant. And, appellant has failed to assert how the proffered evidence would have shown any specific motive or bias any of the witnesses might have had to testify falsely in this case. Finally, admission of the evidence would have presented a significant risk that the jurors might be distracted from the charged case and might disregard appellant's actions due to their dislike of Brandy.

■ Moreover, the defendant's state of mind about what he thought might happen in the future was not relevant to whether his conduct was immediately nec-

43. *Henley*, 454 S.W.3d at 117.

44. *Id.*

45. *Lopez v. State,* 18 S.W.3d 220, 225 (Tex. Crim.App.2000). Unlike in *Lopez*, we are not presented with events that occurred when appellant and the complainant were alone. This case does not involve a "swearing match" that produced a "heightened need" to impeach Brandy's credibility. *Id.*

46. *Id.* at 222.

47. *Id.*

48. *Id.*

49. *Id.*

essary to protect his sons from Douglas or Douglas' former stepson. Douglas was not there. His former stepson was not there. There was no evidence that Brandy or her mother was about to use unlawful force on the boys. A defendant has a constitutional right only "to present a *valid* defense." [50] Courts are "free to apply evidentiary rules that are not arbitrary and unjustified," and the exclusion of evidence that is not "relevant, material, important evidence" does not "offend the Constitution." [51] The rules regarding relevancy are neither arbitrary nor unjustified, nor were they applied by this trial court in an "arbitrary" way that was "disproportionate to the purposes they [were] designed to serve." [52] Since the evidence appellant sought to introduce was not relevant to any valid justification defense, his constitutional rights were not violated. After reviewing the record as a whole, we conclude that the trial court's exclusion of the proffered evidence did not violate appellant's rights under the Confrontation Clause.

## CONCLUSION

We hold that the evidence that appellant sought to introduce to support his claimed justification defense was not material to, nor probative of, any fact that was of consequence to the determination of this action. Because the evidence was not relevant, it was inadmissible, and the court's exclusion of irrelevant evidence was not a violation of appellant's constitutional rights. The trial court judge did not abuse her discretion. We reverse the decision of the court of appeals and reinstate appellant's conviction.

Meyers, J. filed a concurring opinion.

Keller, P.J., filed a dissenting opinion in which Hervey and Newell, JJ. joined.

Hervey, J., filed a dissenting opinion in which Keller, P.J. and Newell, J. joined.

Newell, J., filed a dissenting opinion in which Keller, P.J. and Hervey, J. joined.

## CONCURRING OPINION

Meyers, J., filed a concurring opinion.

Once again, the dissenters have completely missed the point. This defendant was seeking validation for beating his ex-wife under the false theory that he assaulted her in defense of a third person. He claimed to the trial court that he was defending his sons from his ex-wife's fiancé's former stepson, who had been accused of sexually assaulting the boys months earlier. Apparently, to protect his sons from this prior sexual assault, Appellant decided to place his sons in his ex-wife's car, pull his ex-wife out of the car and beat her, break her mother's arm, and then flee the scene, leaving his sons behind. I'm not sure how this possibly could have protected his sons, and I don't know what enticed the dissenters to take the bait and fall for Appellant's argument, but I suspect that it may be an admiration of his vigilante style of justice. Regardless, there is no basis in law or fact for the trial judge to have allowed Appellant to present such a defense, and the trial court properly excluded the testimony.

This was basically Appellant's attempt to secure a jury nullification so that he could get away with retaliating against his ex-wife for the conduct of a third person that occurred over six months earlier.

**50.** *Potier v. State,* 68 S.W.3d 657, 663–64 (Tex.Crim.App.2002) (quoting *DePetris v. Kuykendall,* 239 F.3d 1057, 1062–63 (9th Cir. 2001) and citing to United State Supreme Court cases) (emphasis added).

**51.** *Id.* at 662.

**52.** *Id.* at 659 (citing to *United States v. Scheffer,* 523 U.S. 303, 316, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998)).

The majority thoroughly lays out the facts and the law in this case and comes to the proper conclusion that the trial judge did not abuse her discretion. Therefore, I join the majority opinion.

Keller, P.J., filed a dissenting opinion in which Hervey and Newell, JJ., joined.

The Court says that appellant's proffered evidence, if admitted, would not have raised the "defense of third person" because "the harm from which appellant was purportedly protecting his children was neither immediately present nor certain to occur in the immediate future." I believe that this statement misconstrues the underlying law of self-defense upon which the law of defense-of-third-persons depends.

The use of force to protect a third person is justified if, "under the circumstances as the actor reasonably believes them to be," he would be justified in using force to protect himself.[1] Under the self-defense statute, "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force."[2] This language provides that the actor's conduct must be immediately necessary to protect against the harm, but it does not require that the harm be imminent. This language contrasts with the language of the necessity defense, which requires both that the conduct be immediately necessary and that the harm be imminent.[3] The self-defense statute could have provided that conduct is justified only when the actor "reasonably believes the force is immediately necessary to protect against the other's *imminent* use or attempted use of unlawful force," but it does not.

This language in the self-defense statute would allow the use of self-defense to prevent a "point of no return" event from occurring. Such an event would be one that would make the later use of unlawful force probable and make preventing that use of unlawful force difficult or impossible. Suppose, for example, that a mother were planning to take a plane and fly her daughters to an area controlled by terrorists with the purpose of subjecting the girls to forced marriages. Once the plane takes off, it becomes difficult or impossible to prevent the future sexual assault of the girls. It might well be immediately necessary to use force to stop the mother from leaving in order to protect against the unlawful use of force against the girls, even if the harm would not occur for hours, or even days.

Because the use or attempted use of unlawful force does not have to be imminent for a person's conduct to be "immediately necessary," I disagree with the Court's analysis regarding the need for evidence of imminent harm in order to entitle appellant to an instruction on defense of third persons. I respectfully dissent.

## DISSENTING OPINION

Hervey, J., filed a dissenting opinion in which Keller, P.J., and Newell, J., joined.

Because I believe that Appellant was entitled to present evidence of defense of a third person, I respectfully dissent.

1. *See* TEX. PENAL CODE § 9.33; *Hughes v. State,* 719 S.W.2d 560, 564 (Tex.Crim.App.1986) ("[T]he Legislature was merely placing the accused, who is the 'actor' under § 9.33, *supra,* in the shoes of the third person. So long as the accused reasonably believes that the third person would be justified in using deadly force to protect himself, the accused may step in and exercise deadly force on behalf of that person.").

2. TEX. PENAL CODE § 9.31.

3. TEX. PENAL CODE § 9.22 ("the actor reasonably believes the conduct is immediately necessary to avoid imminent harm").

Under the Due Process Clause of the Fourteenth Amendment, a defendant must be afforded a meaningful opportunity to present a complete defense. *California v. Trombetta*, 467 U.S. 479, 484, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). And I find the analysis in the majority opinion to be more in line with a question of entitlement to a jury charge instruction, rather than whether Appellant was afforded his due process right to present a defense.

The majority seems to impose a subjective review of the reasonableness of Appellant's beliefs, deciding that because this Court finds his beliefs unreasonable, such overrides his right to present a defense. But whether Appellant's beliefs about his need to act were reasonable was a fact question for the jury.

The majority states that,

Under a claim of defense of a third person, a person must reasonably believe that his intervention is 'immediately necessary' to protect the third person. If appellant had put forth evidence that, at the time he assaulted Brandy, an unlawful force was threatening his sons, then we would agree that the reasonableness of his belief that his intervention was immediately necessary to protect his sons would be an issue for the jury. However, the evidence that appellant sought to admit did not suggest that an unlawful force was threatening his sons.

Maj. Op. at 92–93. But the testimony cited by the majority opinion[1] in fact reveals an "unlawful force" of sexual assault having previously occurred, that the complainant lied to the court, and also that she was required to maintain supervised visitation. Whether the majority of the Court believes Appellant's actions to protect his sons from further abuse were reasonable is not the issue. The real issue is whether the defendant was entitled to present his defense to the jury.

Newell, J., filed a dissenting opinion, in which Keller, P.J., and Hervey, J., joined.

Pulling a woman out of her car by her hair, punching her in the face several times, and hitting her head against the concrete driveway is both morally reprehensible and criminally actionable. The vicious nature of such conduct is neither condoned nor in dispute. Rather, the question we are faced with is whether Appellant should have been allowed to introduce evidence to support his claimed justification, however unreasonable it might seem to us, for his violent conduct against his ex-wife.

Appellant's two sons had been sexually abused while they were under his ex-wife's care. This was the reason that the family court presiding over the child-custody case between Appellant and his ex-wife had required that all of the victim's visitations with her children be supervised. Appellant's ex-wife had even lied to the family court about living with her then-fiancé who also happened to be the stepfather of the boy who had sexually abused her children. On the day of the assault, Appellant was aware of the misrepresentations that the victim had made to the family court. And the week before the assault, Appellant learned of new allegations of abuse and that Appellant's ex-wife had been in the house when the abuse occurred.

The State presented evidence that the victim was required to have supervised visits with her children, but did not explain why. Appellant sought to introduce additional evidence to show why those visits had to be supervised, why he believed his ex-wife would fail to protect their children yet again, and why his belief that force

---

1. *See* Maj. Op. at 84–88.

was immediately necessary to protect his two sons from possible further sexual abuse was reasonable. In short, Appellant had reason to believe that his ex-wife would not protect his children because she had failed to do so in the past. Appellant wanted to introduce evidence of his belief and his reasons for that belief. The trial court's ruling effectively prevented Appellant from taking the witness stand in his own defense to explain his state of mind at the time of the offense.

The Court concludes that this hypothetical chain-of-events was too conditional to justify Appellant's assaultive conduct. The Court holds that for Appellant's belief to be reasonable, his children must have been under a threat of imminent harm. Having reached that conclusion, the Court goes on to hold that the trial court properly excluded evidence of what Appellant believed because the Court determines that Appellant could not present sufficient evidence that his belief was reasonable. This strikes me as backwards.

What Appellant believed and why he believed it was unquestionably a fact of consequence to the issue of whether Appellant believed force was immediately necessary and whether that belief was reasonable. This is so regardless of whether Appellant presented evidence that his children were actually threatened with imminent harm. I agree that relevancy applies, but it should be applied properly and equally to both parties. I fear this Court's holding encourages trial courts to weigh the merits of a particular defense before deciding whether evidence that supports

an element of that defense is admissible. That is why I must reluctantly dissent.

### Relevancy is not Sufficiency

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. Evidence need not by itself prove or disprove a particular fact to be relevant; it need only provide a small nudge toward proving or disproving some fact of consequence. *Montgomery v. State*, 810 S.W.2d 372, 376 (Tex.Crim.App.1990); *Stewart v. State*, 129 S.W.3d 93, 96 (Tex.Crim.App.2004) (holding that evidence need not provide conclusive proof in order to be relevant). For example, the State can admit breath test results to show consumption of alcohol even if the results themselves do not establish intoxication at the time of driving. *Id.; see also Manning v. State*, 114 S.W.3d 922, 927 (Tex.Crim.App.2003) ("The fact that this evidence may not have been sufficient, by itself, to prove that Manning's actions were the result of his ingestion of cocaine does not detract from the fact that the evidence of the metabolite was strong evidence that Manning had consumed cocaine."). I see no reason why a defendant must prove his or her entire defensive claim before testimony establishing a part of that claim can be relevant.[1]

Moreover, weighing the sufficiency of the claim to determine the relevance of particular evidence undermines the permissive standard associated with defensive instructions. When deciding whether a

---

1. The Court draws a distinction between a defendant presenting a case-in-chief and presenting evidence of a defense, but this is a distinction without a difference. A defendant must show the relevance of evidence he seeks to introduce whether it supports his case-in-chief or a justification defense. However, re-
gardless of whether a defendant presents evidence in support of a case-in-chief or a justification defense, the evidence need not be sufficient by itself to prove the entire claim in order to be relevant. *Manning*, 114 S.W.3d at 927.

defensive instruction is proper, courts look at the evidence supporting a defensive charge, not the evidence refuting it. *Beltran v. State*, 472 S.W.3d 283, 294 (Tex. Crim.App.2015). A defendant is entitled to every defensive instruction raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense. *Allen v. State*, 253 S.W.3d 260, 267 (Tex.Crim.App.2008). It is not for the trial court to judge the reasonableness or viability of the alleged defense; such a determination is rightfully left to the trier of fact. *Sanders v. State*, 707 S.W.2d 78, 79–80 (Tex.Crim.App.1986). This standard ensures that a trial court cannot weigh the merits of a particular defense when deciding whether a jury gets to hear it.

We have specifically held that the question of whether a particular belief is "reasonable" should be left to the fact-finder. *Granger v. State*, 3 S.W.3d 36, 39 (Tex. Crim.App.1999). There, the defendant sought a mistake-of-fact instruction, and the State argued that the trial court should be allowed to evaluate the reasonableness of the defendant's mistaken belief when determining whether that particular statutory defense was raised. *Id.* at 38–39. We rejected the argument that the trial court could make a preliminary determination of the reasonableness of the defendant's belief when deciding whether or not to give a defensive instruction. *Id.* at 39.

And yet, allowing the trial court to weigh the reasonableness of Appellant's belief before admitting evidence of what Appellant believed permits the trial court to do exactly that. The only difference is that the trial court weighs the reasonableness and viability of the defense when the defendant tries to introduce evidence rather than when he or she requests a defen-

sive instruction. In contrast, a proper application of the relevancy standard without reference to the sufficiency of the evidence establishing the entire defensive claim is consistent with our standards for considering the appropriateness of a defensive instruction. Even if the evidence Appellant sought to admit did not provide conclusive proof of Appellant's defensive claim, it at least provided a small nudge towards proving that Appellant believed force was immediately necessary and that his belief was reasonable under the circumstances.

### Belief in the Need for Immediate Action Does Not Require the Existence of Imminent Harm

As Judge Hervey rightly points out, the Court appears to analyze the evidentiary admissibility question by essentially determining that Appellant would not be entitled to a jury instruction on Appellant's defense-of-a-third person claim. The Court determines the evidence in question is inadmissible because ultimately Appellant would not be entitled to his defense. As discussed above, I do not believe the relevancy of the evidence turns upon the success or failure of Appellant's defensive claim as a whole. However, to the extent that such analysis is necessary, I agree with Presiding Judge Keller that the plain terms of the self-defense and defense-of-a-third-person statutes do not require a showing of imminent harm.

In order to be entitled to an instruction on defense of a third person, Appellant was required to present evidence that his sons would have been entitled to act in self-defense, and that he reasonably believed his intervention was immediately necessary to protect his sons from the threat of force. TEX. PENAL CODE § 9.33; *Morales v. State*, 357 S.W.3d 1, 4 (Tex. Crim.App.2011). A person is justified in using force in self-defense against another

when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. TEX. PENAL CODE § 9.31. A "reasonable belief" means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor. TEX. PENAL CODE § 1.07(42).

Under the plain terms of the statute, a defendant must believe force is immediately necessary, but the legislature did not use the word "imminent" to modify the use of force by "another." Simply put, a defendant must show a reasonable belief in the immediate need to act not that his or her action was necessary to avoid immediate harm. This stands in marked contrast to the necessity defense which does require that a defendant present evidence of "imminent harm" to justify his or her actions. TEX. PENAL CODE § 9.22(1); *see also Bowen v. State*, 162 S.W.3d 226, 229–30 (Tex.Crim.App.2005) (holding that necessity and self-defense are separate defenses). Neither the self-defense statute nor the defense-of-a-third person statute requires a showing that the force used or threatened occur "at that moment."

If it did, that would be inconsistent with our "apparent danger" jurisprudence. As we explained in *Jones v. State*, it is not necessary for a jury to find that a victim was actually using or attempting to use unlawful deadly force against a defendant in order for a defendant to claim self-defense. 544 S.W.2d 139, 142 (Tex.Crim. App.1976); *see also Hamel v. State*, 916 S.W.2d 491, 493 (Tex.Crim.App.1996).

The only requirement is that a defendant reasonably believe he or she must act immediately to prevent danger; he or she can have a reasonable belief that force is immediately necessary even if the objective evidence shows the defendant was never in any real danger. *Morales*, 357 S.W.3d at 8 (noting that a defendant is entitled to rely upon a defense-of-a-third-person justification where he reasonably believes force is immediately necessary regardless of whether that belief is actually correct). Obviously, a defendant's belief that force is immediately necessary appears more reasonable if evidence is presented to show a contemporaneous use or threat of force. But the statute does not require a showing of contemporaneity; it only requires a showing that the defendant reasonably believed his actions were immediately necessary.[2]

I acknowledge that there are cases where a defendant's belief that force is immediately necessary has been deemed categorically "unreasonable." *See, e.g., Cyr v. State*, 887 S.W.2d 203, 205–06 (Tex. App.-Dallas 1994, no pet.) (holding that abortion-clinic protesters belief that third-trimester abortions were imminent at clinic was unreasonable absent any evidence that such third-trimester abortions had been performed at the clinic); *Wilson v. State*, 777 S.W.2d 823, 825 (Tex.App.— Austin 1989), *aff'd*, 853 S.W.2d 547 (Tex. Crim.App.1993) ("No person could reasonably believe that the seizure of the university president's office was genuinely *necessary* to stop apartheid."). But these cases were wrongly decided because they too conflate relevancy with sufficiency.[3] I

---

**2.** The Court posits that a defendant would not be entitled under self-defense to strike a blow to prevent anticipated danger. Yet we have already reached the contrary conclusion in *Hamel v. State*, a case in which the defendant stabbed the victim repeatedly after the victim had left the defendant's residence and was walking back to his car because the defendant feared the victim was getting a gun. *Hamel*, 916 S.W.2d at 493.

**3.** I am also not persuaded by *Andersen v. United States* because that admiralty case is clearly distinguishable from this case. There,

would rather trust a jury's ability to determine if a defendant's stated belief is truly irrational than risk a defendant's constitutional right to present a complete defense.

### The Court's Rule 403 Analysis Points to the Problem with Admitting this Evidence

Whether the trial court could have excluded Appellant's proffered evidence under Rule 403 is a much closer call. Rule 403 favors the admissibility of relevant evidence and presumes that relevant evidence will be more probative than prejudicial. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex.Crim.App.1991) (op. on reh'g.). A proper Rule 403 analysis includes, but is not limited to, four factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Id.* at 389–90.

Rule 403 does not exclude all prejudicial evidence, only evidence that is unfairly prejudicial. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex.Crim.App.2005). "Unfair prejudice" refers only to relevant evidence's tendency to tempt the jury into reaching a decision on grounds apart from the proof presented in support of the claim. *Manning*, 114 S.W.3d at 928. If the evidence relates directly to elements of a particular claim, it may be prejudicial, but not unfairly so. *Id.*

In *Gigliobianco v. State*, we refined our Rule 403 analysis to include other factors for consideration on the issue of prejudice.

210 S.W.3d 637, 641–42 & n. 8 (Tex.Crim. App.2006). Under a proper Rule 403 analysis, we consider whether there is any tendency of the evidence to confuse or distract the jury from the main issues as well as any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence. *Id.* at 641. As we acknowledged, "these factors may well blend together in practice." *Id.* at 642.

The Court correctly notes that Appellant's evidence carried with it the potential to impress the jury in an irrational and indelible way. Presenting evidence that the victim failed to protect her own children from sexual abuse carried with it the risk that the jury would reach its decision out of antipathy for the victim rather than on the merits of the case or Appellant's defense. *Gigliobianco*, 210 S.W.3d at 641 ("Evidence might be unfairly prejudicial if, for example, it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence."). Moreover, as the State argues, without a jury instruction on the defensive issue, the evidence could have encouraged the jury to engage in jury nullification. So while the evidence would support Appellant's defensive claim, I agree that it was also very inflammatory.

Still, I cannot join the Court's opinion because the Court's skewed relevancy analysis tips the scales too far in favor of prejudice. According to the Court, Appellant's evidence was not probative of Appellant's perception because his sons were not in immediate danger. But re-

---

the "imminent danger" the defendant sought to avoid was the consequences of his own conduct in shooting the captain. *Andersen v. United States*, 170 U.S. 481, 18 S.Ct. 689, 42 L.Ed. 1116 (1898) ("The immediate danger which threatened him was the danger of the gallows."). Holding that the defendant's conduct in *Andersen* was not justified is consis-

tent with the long-standing prohibition against claiming self-defense where the defendant himself provokes the difficulty. *Elizondo v. State*, 487 S.W.3d 185, 196 (Tex.Crim. App.2016) ("However, a defendant may forfeit his right to self-defense if he provokes the attack."). In this case, the danger Appellant perceived was not of his own making.

gardless of whether Appellant had to show that his sons were actually facing "imminent harm," Appellant's evidence of what he believed and why he believed it supported his claim that he believed his actions were immediately necessary and that his belief was reasonable under the circumstances. The Court too easily dismisses the probative value of the evidence in question or Appellant's need for the evidence, which results in a Rule 403 analysis that presumes prejudice. This approach is incompatible with a rule that presumes admissibility unless the probative value of evidence is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403; *Montgomery*, 810 S.W.2d at 389.

### *Conclusion*

The Court determines that Appellant's conduct was unjustified. I do not suggest it was. If we were considering whether the jury acted rationally in rejecting Appellant's defensive claim, I would have no qualms about weighing whether a jury's determination was rational. But the jury never had the chance to consider Appellant's defense because the trial court would not allow Appellant to admit his defensive evidence. That, to me, is unreasonable.