

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-17-00348-CR

SAVANNA LEE BIBLE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 316th District Court
Hutchinson County, Texas
Trial Court No. 11,562, Honorable James M. Mosley, Presiding

January 10, 2019

## MEMORANDUM OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

A jury found appellant, Savanna Lee Bible, guilty of aggravated assault with a deadly weapon and assessed her punishment at two years' confinement in the Texas Department of Criminal Justice Institutional Division.[1]  On the jury's recommendation, the trial court suspended imposition of the sentence and placed appellant on community supervision for a period of two years.  In a single issue, appellant contends the trial court

---

[1] See TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011).

committed reversible error when it refused to allow her to present evidence of the victim's alleged affiliation with gangs, thus denying her fundamental right to a fair trial. We affirm.

## Background

In September of 2015, appellant was dating Destiny Laiche, whom she had met that summer. The two women were inside a gas station in Stinnett, Texas, when Laiche's father, Brian Larson, entered the store. According to Laiche and appellant, Larson had followed them and harassed them earlier in the day, but Larson stated he could not recall seeing them prior to the run-in at the gas station. Laiche had recently moved out of her father's home and their relationship was strained. While appellant was in the restroom, Laiche and her father got into an argument. The store clerk told them to "take it outside." Appellant and Laiche left the store first, and appellant sat in the driver's seat of Laiche's truck. Laiche was "half in, half out" of the vehicle when Larson exited the store.

According to Larson, Laiche began yelling at him and calling him names. He testified that he told Laiche, "[I]f she wanted to kick my butt, to come . . . see how it worked out." Laiche testified that Larson walked toward her in an aggressive manner and they were cursing at each other. At some point during this verbal confrontation, appellant got out of the truck with a gun in her hand. She pointed the gun at Larson and told him to back up, saying, "Brian, you're not going to hit [Laiche]." Larson then left the scene. Police arrived shortly thereafter.

At trial, appellant's defense was that her conduct was justified, as she believed that she needed to protect Laiche from Larson.[2] Laiche was the first witness called by the defense. At a bench conference while Laiche was on the stand, appellant's counsel requested a hearing outside the presence of the jury. She asked to make an offer of proof and get a ruling on the admissibility of evidence of Larson's prior bad acts. Appellant's counsel argued that, "the core of our defense is whether or not [appellant] had a reasonable belief that the force was necessary" to defend Laiche from Larson. She stated that Larson's prior acts of violence were relevant to show appellant's state of mind at the time of the incident.

The trial court heard testimony from Laiche regarding specific acts of violence by Larson which Laiche had discussed with appellant. Appellant's counsel then questioned Laiche about Larson's gang affiliation:

> Q: This isn't acts of violence, but what did Brian say about being in prison and being in the Aryan Brotherhood?
>
> A: He always talks about his years in Huntsville, San Quentin. He talks about how when he was in there he had to join a gang, so he joined the White Pride. And he talks about all of his tattoos he got in there, about being racist against other people and about the gay guys that were in there. They always got beat up in the bathrooms and stuff like that. How he enjoyed making new friends that were in the gangs, how he was affiliated with Aryan Brotherhood. And all he had to do was make one phone call if something happened and he could get rid of someone just like that.
>
> Q: Do you know if any of that's true?
>
> A: I have no idea.

---

[2] *See* TEX. PENAL CODE ANN. § 9.33 (West 2011) (person is justified in using force or deadly force to protect a third person if she reasonably believes the third person would be justified in using force or deadly force to protect herself and if she reasonably believes her intervention is immediately necessary to protect the third person).

Q: Did he say these things more than once?

A: He says it all the time.

Appellant's counsel argued that this testimony was "absolutely relevant if he is talking about homosexuals always being beaten in prisons, and him being part of an organization that did that" and "absolutely relevant as to [appellant's] state of mind and whether or not her fear was reasonable." The trial court sustained the State's objection to this testimony.

When Larson was on the witness stand, appellant's counsel asked him if appellant had ever seen him wearing short sleeves. In response to the State's objection that the evidence was not relevant, appellant's counsel stated, "I was told he has a [s]wastika tattoo. If she has seen those, it goes to her state of mind." Upon further prompting regarding the effect on appellant's state of mind, appellant's counsel explained, "He is a bad guy." The trial court sustained the State's objection and advised appellant's counsel that she could make an offer of proof.

Appellant also testified at trial. She testified that she believed Larson "was a very dangerous person" and that she had heard stories about him being violent toward multiple women and children. In the context of questioning about Larson's history of violence, appellant was asked, "What kinds of things did you hear him brag about?" Counsel for the State, apparently anticipating that appellant was going to talk about Larson's prison gang affiliation and related tattoos, objected to the testimony insofar as it was "anything outside of acts of violence." Appellant's counsel again argued that the evidence of gang connections went to appellant's beliefs about Larson, asserting, "Belief goes in to much more than just bad acts, judge. If you see somebody have a swastika tattoo, and they

4

brag about that, the jury needs to hear about that." The trial judge disagreed, and sustained the State's objection. Consequently, the jury did not hear testimony regarding Larson's alleged gang affiliation or tattoo.

## Standard of Review

When error has been properly preserved, we review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Henley v. State*, 493 S.W.3d 77, 82-83 (Tex. Crim. App. 2016). A trial judge abuses his discretion when his decision falls outside the zone of reasonable disagreement. *Id.* at 83. That is, we may reverse a trial court's ruling only if we find it "was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008)).

## Analysis

Appellant contends that the excluded evidence provided "Larson's motive," stating, "Larson's gang membership was relevant because it made the existence of the motive for the *imminent* assault that *Appellant perceived* and stopped." In her only issue on appeal, appellant argues that she was denied her fundamental right to a fair trial because the exclusion of this evidence denied her ability to present a meaningful defense. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 164

5

L. Ed. 2d 503 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986)).

The State responds that appellant did not raise her Sixth Amendment right to a fair trial argument with the trial court and that it has not been properly preserved. We agree. At trial, appellant contended that the evidence of Larson's alleged affiliation with a gang was relevant to explain appellant's apprehensiveness and to show that Larson was "a bad guy." She made no complaint that the trial court's rulings denied her constitutional right "to present a meaningful defense." Additionally, appellant did not specify to the trial court that evidence of Larson's alleged connection to gangs had some bearing on her state of mind that was distinct from the defensive theory that she *did* present—i.e., that Larson had a propensity for violence and that appellant's conduct was reasonable under the circumstances given Larson's actions. The record clearly reveals that other evidence supporting appellant's defense was before the jury, such as testimony regarding Larson's history of violence against women and children and his use of homophobic slurs toward appellant and Laiche. Appellant did not apprise the trial court that by excluding evidence of Larson's gang affiliation and related tattoos, she was denied the opportunity to present her defensive theory.

To preserve a complaint for appellate review, the record must show a specific and timely complaint was made to the trial judge and the trial judge ruled on the complaint. TEX. R. APP. P. 33.1(a). The point of error on appeal must comport with the objection made at trial. *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986) (en banc). Appellant does not direct us to, nor have we found, a place in the record where she

brought her complaint based upon a constitutional violation to the attention of the trial court and obtained an adverse ruling.

Appellant's constitutional right to a meaningful opportunity to present a complete defense stems from the Due Process Clause of the Fourteenth Amendment and the Compulsory Process and Confrontation Clauses of the Sixth Amendment, and is a right subject to procedural default. *Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (holding appellant failed to preserve his claim that he was denied the right to present a defense and the right to due process and due course of law because he did not make that objection at trial). Because appellant did not make this objection at trial, she has failed to preserve the issue for our review.

Moreover, even if appellant had preserved error regarding the excluded evidence, we conclude that the trial court's rulings were not so clearly wrong as to constitute an abuse of discretion. Appellant's offer of proof contained no clear evidence showing that appellant was privy to the conversations in which Larson discussed his gang affiliation, or that Laiche ever relayed that information to appellant. There is, therefore, no evidence that Larson's alleged gang membership affected appellant's state of mind or had any bearing on the confrontation involving Larson, Laiche, and appellant. Under these circumstances, we are not convinced that the excluded evidence was probative of the reasonableness of appellant's belief that her use of force was necessary. Therefore, we conclude that the trial court acted within its discretion in excluding testimony regarding Larson's alleged affiliation with a gang.

Conclusion

Appellant did not apprise the trial court that its rulings sustaining the State's objections to evidence of Larson's alleged gang affiliation prevented her from presenting a meaningful defense. Accordingly, appellant's complaint has not been preserved for appellate review. Even assuming appellant had preserved her complaint, we conclude the trial court did not abuse its discretion in excluding the evidence. Therefore, we affirm the judgment of the trial court.

Judy C. Parker
Justice

Do not publish.

Pirtle, J., concurring.