# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-17-00764-CR

---

**Chauncy Jarrell Williams, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 427TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-15-203363, THE HONORABLE TAMARA NEEDLES, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Chauncy Jarrell Williams appeals his conviction for assault family violence causing bodily injury. *See* Tex. Penal Code § 22.01(a)(1). A jury assessed Williams's punishment at 365 days in the Travis County Jail and a $4,000 fine, with a recommendation that the sentence be suspended. The district court rendered judgment on the jury's verdict and suspended Williams's sentence for twelve months. On appeal, Williams contends that the district court erred by: (1) admitting into evidence the victim's statements to medical personnel identifying him as the perpetrator of the assault; and (2) denying Williams the opportunity to make an offer of proof challenging the voluntariness of his statements to a police detective. We will affirm the district court's judgment of conviction.

## BACKGROUND

Several witnesses testified at trial, including Deputy Louis Moncivais and Detective Steven Moore with the Travis County Sheriff's Office, an emergency medical services technician, an emergency room nurse, and a 911 dispatcher. The dispatcher testified that a neighbor called 911 to report a physical fight in Williams's apartment. The neighbor reported hearing sounds of a physical argument, including a woman screaming in the apartment right above his. He stated that the people who lived upstairs were a male and a female, and that "they've got some kids up there, too."

Deputy Moncivais and Detective Moore were dispatched to the scene. Detective Moore testified that he arrived shortly before 2:00 a.m. When he first entered the apartment, he saw a male and a female along with two children, one about four years old and another about four months old. Williams was standing at the door of the apartment, holding one child. Williams backed up and motioned his hand towards the opening to a bedroom. Detective Moore noted that Williams had a small scratch on his chest, and Williams stated that he also had a sore shoulder.

Deputy Moncivais spoke with the female, who was emotional, crying, and had scratches and marks on her that were "not anything you get from just sleeping." Deputy Moncivais estimated that she was 5 feet 3 inches tall and weighed 170 pounds, while Williams was 6 feet tall and weighed 190 pounds. Deputy Moncivais had a discussion with her about what happened and called EMS for her. She completed an assault-victim statement describing what happened on the night in question, and Deputy Moncivais used that assault-victim statement in determining whether to make an arrest. Believing that Williams was the primary aggressor in the assault, Deputy Moncivais arrested Williams.

2

When EMS arrived, the victim reported to an EMT that she got into a fight that night with her boyfriend and stated, "He hit me several times with an open hand to my head." Later while at the hospital, the victim reported to an ER nurse that her boyfriend hit her on the head with an open hand about one to two hours earlier. The victim's EMS and hospital records documented her symptoms and injuries, including contusions, lacerations, headache, and a pain level of eight (on a scale of one to ten).

Before invoking her Fifth Amendment privilege, the victim testified briefly that she loves Williams, that he is the father of her two children, and that she did not want him prosecuted for this offense.

During jury deliberations, Williams moved for a directed verdict that the district court denied. At the conclusion of trial, the jury convicted Williams of assault family violence causing bodily injury. Williams again moved for a directed verdict. The district court denied the motion, sentenced Williams in accordance with the jury's verdict, and suspended Williams's confinement and fine for twelve months. This appeal followed.

## DISCUSSION

### Admission of victim's statements to medical personnel

In his first issue, Williams contends that the trial court erred by admitting into evidence the victim's statements to an EMT and an ER nurse identifying him as the perpetrator of her assault. Relying on *Taylor v. State*, 268 S.W.3d 571 (Tex. Crim. App. 2008), Williams specifically contends that the court should have excluded this evidence because the statements did not "directly relate to" the victim's medical diagnosis or treatment and thus were inadmissible hearsay. *Cf. id.* at 587, 589 (concluding ultimately that hearsay exception in Rule

803(4) did not apply to victim's statements made to counselor during session conducted several months after offense as part of victim's ongoing, long-term therapy and recognizing that "reclining on a therapist's or psychiatrist's couch is not quite the same as sitting in the emergency room in the immediate aftermath of an injury or on the physician's cold examination table in the interest of diagnosing and curing some exigent disease or ailment"); *see* Tex. R. Evid. 801(d) (defining hearsay), 803(4) (providing hearsay exception for statement that is "*reasonably pertinent to*," and made for, medical diagnosis or treatment) (emphasis added).

We review a trial court's ruling on the admission of evidence under an abuse-of-discretion standard. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). We uphold the trial court's ruling unless it is outside the zone of reasonable disagreement. *Id*. An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016).

Hearsay is a statement, other than one made by the declarant while testifying at trial, that is offered to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Hearsay is inadmissible except as provided by statute, the rules of evidence, or other rules prescribed under statutory authority. *Id*. R. 802. Rule 803(4) provides an exception to the rule against hearsay for a statement that:

> (A) is made for—and reasonably pertinent to—medical diagnosis or treatment; and
>
> (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause.

*Id*. R. 803(4).

Texas courts have concluded that the hearsay exception in Rule 803(4) allows evidence of a victim's statement to a medical professional identifying the perpetrator of an

4

assault when the statement is pertinent to the victim's diagnosis and treatment in the immediate aftermath of the victim's injury. *See, e.g.*, *Lane v. State*, 111 S.W.3d 203, 211 (Tex. App.—Eastland 2003) (concluding that wife's statements made to EMT and ER nurse shortly after assault, including statement that her husband hit her, were admissible under Rule 803(4) because they were pertinent to wife's diagnosis and treatment), *aff'd*, 151 S.W.3d 188 (Tex. Crim. App. 2004); *see also Green v. State*, No. 09-15-00220-CR, 2017 Tex. App. LEXIS 598, at *7-10 (Tex. App.—Beaumont Jan. 25, 2017, pet. ref'd) (mem. op., not designated for publication) (concluding that victim's statements made to EMT and to ER nurse on day after assault, identifying perpetrator of that assault, were admissible under Rule 803(4) because they were relevant to history of patient's injury, obtaining proper medical care, and ensuring that first responders would not unwittingly allow patient to be accompanied to hospital by person who allegedly inflicted those injuries); *Loya v. State*, No. 08-12-00315-CR, 2014 Tex. App. LEXIS 10250, at *11-13 (Tex. App.—El Paso Sept. 12, 2014, no pet.) (mem. op., not designated for publication) (noting that statement victim made to EMT on day of injury identifying her assailant was admissible under Rule 803(4) because EMT relied on mechanism of injury or how event happened to diagnose patient and determine how she sustained her injuries). These cases, and not the *Taylor* case that Williams cites, are more instructive in this appeal.

Here, the EMT who saw the victim within two hours of the assault testified that he asked the victim what caused her injuries and about her past medical history. He stated that such information is used in determining the potential for, and severity of, the current injury. Patient evaluations, according to the EMT, include primary and secondary assessments. The primary assessment involves checking breathing, circulation, and neurostatus. The secondary assessment involves how things happen, and that is where a patient's statements, such as, "I was

5

hit," factor into "what you're looking for." The EMT explained entries from a "Patient Care Report" that he completed for the victim, describing the injuries that he observed on her and her statements to him. The report, admitted into evidence with EMS's business records, noted that the victim "got into a fight tonight" with "[h]er boyfriend." Over Williams's objection, the EMT testified that the victim attributed her injuries to that physical assault. Similarly, the report noted that "Patient states, 'He hit me several times with an open hand to my head.'" The EMT testified that he impressed upon the victim the importance of having her symptoms evaluated at the hospital. EMS transported her there.

The ER nurse who saw the victim at the hospital within two hours of the assault testified that part of her medical assessment is based on what a patient tells her and what she sees, hears, or notices about the patient. The ER nurse testified that according to her notes, which were admitted into evidence with the hospital's business records, the victim said she "was assaulted by her boyfriend" and "hit on the head with an open hand." Based on that report, the ER nurse asked the victim if she was experiencing any vision changes or sensitivity to light. The ER nurse testified, as per her notes in the hospital records, that the victim reported having a pain level of eight on a scale of one to ten and that she felt as though the back of her head were bruised. The hospital records also reflect that the "Time of Incident" was "1-2 Hours Ago," that the "Location Incident Occurred" was "Patient's Residence," and that the "Chief Complaint" was "Assault Victims of Abuse." Further, the records show that when asked, "Do you currently think your safety is being threatened by anyone you love?" the victim answered, "Yes." Upon release from the hospital, the victim acknowledged her receipt of after-care instructions, including "information about domestic violence."

6

On this record, we conclude that the district court could have reasonably determined that the victim's statements to the EMT and to the ER nurse that were made within two hours of the assault, identifying the inception and source of the victim's injuries, were "reasonably pertinent to" the victim's medical diagnosis or treatment and within the medical-treatment exception to the hearsay rule in Rule 803(4). *See* Tex. R. Evid. 803(4); *Gonzalez*, 544 S.W.3d at 370; *Lane*, 111 S.W.3d at 211; *see also Green*, 2017 Tex. App. LEXIS 598, at *7-10; *Loya*, 2014 Tex. App. LEXIS 10250, at *11-13. Accordingly, we overrule Williams's first issue.

**Admission of statements to detective**

In his second issue, Williams contends that the district court erred by denying him the opportunity to make an offer of proof challenging the voluntariness of his statements to a police detective "relating to a confrontation with the complainant." By raising reasonable doubt as to the voluntariness of his statements, which he contends were made while in custody and without *Miranda* warnings, Williams expected to show his entitlement to an exclusionary instruction for illegally obtained evidence under article 38.23(a) of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 38.23(a). The district court denied Williams's request for an article 38.23(a) instruction to the jury. Even assuming that Williams demonstrated the complained-of error, he has not shown how he was harmed. *See* Tex. R. App. P. 44.2(b).

Williams does not specify which of his statements should have been excluded from evidence at trial but cites to two pages of the record. On those pages, Detective Moore testified that Williams told him that he and his girlfriend (the victim), had been arguing earlier that day and were sleeping separately in their apartment. Williams slept on a couch, and his

7

girlfriend slept in the master bedroom, sharing a bed with one of their young children while their other child slept in a crib. Williams stated that one child started crying and that the other child wet the bed. Williams and his girlfriend then had an argument about the bedwetting. Williams told Detective Moore that "the disturbance" happened in the kitchen.

Erroneous admission of evidence is non-constitutional error. *Gonzalez*, 544 S.W.3d at 373. Non-constitutional error is reversible only if it has a substantial and injurious effect or influence in determining the jury's verdict. *Id.* We will not overturn a conviction if we have a fair assurance from examination of the record as a whole that the error did not influence the jury, or had but a slight effect. *Id.* When making this determination, we consider: (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained-of error. *Id.*

Here, aside from Williams's statements to the detective, the jury heard that:

- a neighbor called 911 reporting sounds of a physical argument, including a woman screaming, in the apartment right above his;

- the neighbor stated that the people who lived upstairs were a male and a female and that "they've got some kids up there, too";

- when Detective Moore first entered the apartment, he saw a male and female along with a child who was about four years old and a child who was about four months old;

- Detective Moore noted that Williams had only a small scratch on his chest;

- when Deputy Moncivais saw the victim, she was emotional, crying, and had scratches and marks on her that were "not anything you get from just sleeping";

- while at the scene, Deputy Moncivais had a discussion with the victim about what happened and called EMS for her;

- Deputy Moncivais estimated that the victim was 5 feet 3 inches tall and weighed 170 pounds, while Williams was 6 feet tall and weighed 190 pounds;

8

- the victim completed an assault-victim statement (not admitted into evidence) describing what happened on the night in question;

- Deputy Moncivais used that assault-victim statement in determining whether to make an arrest;

- Deputy Moncivais believed Williams was the primary aggressor and arrested him;

- The victim reported to an EMT that she got into a fight that night with her boyfriend and stated, "He hit me several times with an open hand to my head."

- The victim reported to an ER nurse that her boyfriend hit her on the head with an open hand about one to two hours earlier;

- The victim's EMS and hospital records documented her symptoms and injuries, including contusions, lacerations, headache, and a pain level of eight (on a scale of one to ten);

- The victim's hospital records show that the incident occurred at "Patient's Residence";

- The victim's hospital records also showed that that she thought her safety was being threatened by someone she loved;

- The victim testified, before invoking her Fifth Amendment privilege, that she loves Williams, that he is the father of her two children, and that she did not want him prosecuted for this offense; and

- The State's closing argument did not emphasize the complained-of error, but rather contained only one reference to a statement from Williams: "When the defendant, given an opportunity on scene to say what he thought happened, oh, they just kind of argued about stupid stuff."

This trial record, considered in its entirety, shows that any error in allowing Williams's complained-of statements to Detective Moore would have had but slight effect, if any, on the jury given the strength of the additional evidence indicating his guilt. Much of the evidence came from sources who provided information contemporaneous with, or within hours of, the assault. Further, this record shows that the State's closing argument did not emphasize the complained-of statements from Williams. Thus, we conclude that Williams's statements to

9

Detective Moore did not have a substantial and injurious effect in determining the jury's verdict. *See Gonzalez*, 544 S.W.3d at 373. We overrule Williams's second issue.

## CONCLUSION

We affirm the district court's judgment of conviction.

                                              _____

                                              Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Baker and Smith

Affirmed

Filed:   July 23, 2019

Do Not Publish