**AFFIRMED as MODIFIED and Opinion Filed February 21, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-01169-CR

**RODRICK TERRELL SCOTT, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F17-31737-N**

# OPINION

Before Justices Molberg, Reichek, and Evans
Opinion by Justice Evans

Appellant Rodrick Scott appeals his conviction for murder. In three issues, appellant contends the non-accomplice evidence presented at trial was insufficient to corroborate the accomplice witness's testimony, and the trial court erred by excluding evidence regarding the complaining witness's gang affiliation. In a single cross-point, the State requests we reform the judgment to correctly reflect appellant's plea of not guilty. Concluding appellant's arguments are without merit, we modify the trial court's judgment and affirm as modified.

## BACKGROUND

Around 11:37 pm on May 9, 2016, Demodrick Anderson was shot multiple times in front of his home, ultimately causing his death. Police recovered Anderson's cell phone which showed five calls from the same phone number in the 214 area code (214 phone) between 11:28 pm and

11:35 pm. The police connected the 214 phone to Rodrick Rodgers and learned that the 214 phone was near the crime scene when the murder occurred.

Police arrested and interrogated Rodgers, who confessed that appellant asked him to set up a drug deal to rob Anderson. After identifying appellant in a photo line-up, Rodgers provided police with the phone number appellant used the day of the murder, a phone number in the 817 area code (817 phone). Using the 817 phone's records, police discovered that phone was also near the crime scene at the time of the murder. However, when questioned, appellant denied involvement in the crime and ownership of the 817 phone as it was registered in his girlfriend's name. Appellant and Rodgers were charged with capital murder.

At trial, Rodgers testified he spoke to or met with appellant only about drug transactions. Though the 817 phone was registered to appellant's girlfriend, Rodgers explained he only spoke to appellant at that number. According to Rodgers, appellant planned to use the drug deal to investigate a future robbery of Anderson. After his phone call with appellant on May 9, Rodgers messaged Anderson on the messaging application "Kik" and told Anderson that his "uncle" wanted to purchase two pounds of marijuana. Anderson gave him a price and Rodgers replied that he would call his "uncle" to confirm the deal. Rodgers then called appellant.

Around 10:30 pm that night, appellant arrived at Rodgers's home. Rodgers noted appellant was driving a Chrysler 200 that night, which was not his regular car. Appellant told Rodgers to message Anderson to buy a gram of marijuana. Rodgers complied and asked for Anderson's address. When Rodgers got into the car, he saw a man in a hoodie with dreadlocks in the car whom he did not know. Appellant then told Rodgers they would rob Anderson that night.

When they arrived in Anderson's neighborhood, Rodgers called Anderson multiple times to get him to come outside, but Anderson wanted to conduct the drug deal in his garage. Meanwhile, appellant dropped the stranger in the hoodie off down the street from Anderson's

house. Still in the car, appellant and Rodgers circled the block multiple times while Rodgers continued to call Anderson asking him to come outside. Appellant then called the stranger in the hoodie, who began walking toward Anderson's home.

From the passenger seat, Rodgers heard gunshots and saw someone shoot a gun. Rodgers testified the car was at the stop sign near Anderson's house when the shooting occurred. At the time, Rodgers was still on the phone with Anderson and appellant was still on the phone with the stranger in the hoodie. After appellant circled the block again, Rodgers saw Anderson's mother, Carmela Harris, pull up to the house. Rodgers testified appellant cracked his window and asked Harris what had happened before driving off.

Appellant, who was still on the phone with the stranger in the hoodie, then drove to a neighboring street and picked him up. According to Rodgers, the stranger in the hoodie got into the passenger seat of the car with two guns, though he had exited the car with only one. Appellant drove everyone back to his regular car, which was in Anderson's neighborhood. Appellant and Rodgers got into appellant's car with the murder weapon while the stranger in the hoodie drove off in the Chrysler 200 with the other gun. While driving to the Cypress Club Apartments, appellant threw Rodgers's cell phone out of the window. Once at the apartments, appellant called someone inside the apartment who took the murder weapon.[1] Appellant then took Rodgers home.

Carmela Harris testified Anderson lived with her and sold drugs out of her garage. In doing so, she explained he regularly left the garage half-open, carried a gun, and kept the money he made from his daily drug sales on him. When she arrived home to find Anderson seriously injured on the front lawn, Harris noticed a man wearing a hoodie running away from the house. She chased him onto the next street where she saw him get into the passenger's side of a gray car that appeared

---

[1] The police looked at the phone records of Percy Demerson, one of appellant's friends. His records put him in the area where the dropped off the gun at the time they were dropping off the gun.

to be waiting for him. The State offered her 911 call in which she also said a man in the hoodie got into the passenger's side of a gray car. Harris also testified that police found a gram of marijuana in her front yard and that Anderson's gun and money were missing.

The State offered into evidence home surveillance video from cameras in Anderson's neighborhood. The video showed a car circling Anderson's block several times between 11:22 pm and 11:39 pm. Detective Brent McCoy testified he sent a photo of the suspect vehicle to an expert who identified the car as a silver or gray 2011 Chrysler 200 based on its distinctive hubcaps and tail lights. At 11:29 pm, the video showed the man in the hoodie walking on the sidewalk in front of Anderson's home before moving to the side of Anderson's home. Anderson exited the garage and walked onto the driveway while the Chrysler 200 drove by. At 11:37 pm, the man in the hoodie emerged onto the driveway and Anderson fell to the ground. The man in the hoodie then interacted with Anderson's body. At 11:38 pm, the man walked away from the scene but was followed by Harris who had just pulled up to the house. At 11:39 pm, Harris returned to her home and called 911. At that same time, the video shows the Chrysler 200 passing by Anderson's home one more time.

Detective Tracy Hinson testified the police collected Anderson's phone from the scene. Anderson's girlfriend told the police about his second phone, which received Kik messages earlier that day. The State offered photos of Kik messages between the account BleezyWorld, which was registered to Rodgers, and Anderson. Around 2:00 pm, Rodgers messaged Anderson:

> [Rodgers]: My uncle say what 2ps Gone Run Em.
> . . .
> [Anderson]: How much he tryna spend
> [Anderson]: Nd wen he wnt em
> [Rodgers]: 15 & Today I'm Thinking Ima Call em He Said See What Was Your ticket first
> [Anderson]: Itz gne be atleast 6 fa 2
> . . .
> [Rodgers]: I'm Finna Call Him Rn Ima Call You

Around 10:40 pm, Rodgers messaged Anderson again:

> [Rodgers]: I Can Get A Gram From Ya
> . . .
> [Anderson]: Yuh come to dat house
> [Rodgers]: What House
> [Rodgers]: Send The Address
> [Anderson]: 1133 coffeyville tr

At 10:56 pm, Rodgers replied that he was on his way and, at 11:27 pm, asked Anderson for his phone number.

Police obtained phone records for the 214 and 817 phones and they were admitted into evidence. The phone records showed eight calls between appellant and Rodgers on the day of the crime including calls before the Kik messages, around 2:30 pm just after Rodgers messaged Anderson on Kik, and evening calls. The State offered a call log between Anderson and Rodgers showing that they exchanged five phone calls between 11:27 pm and 11:35 pm on the night of the murder. The records also showed the 817 phone called a telephone number with a 225 area code (225 phone) at 11:29 pm and remained on the phone until 11:37 pm.[2] Though police were unable to identify the owner of the 225 phone, they obtained records for the 225 phone as well.

Using the phone records for all of the phones, Mike Fegely, an employee of the phone record mapping company Zet-X, testified he developed a Google Maps presentation of their locations on the night of the murder. Fegely was asked to provide information about location data for the phones associated with appellant (817 phone), Rodgers (214 phone), and the man wearing the hoodie (225 phone). Fegely testified that the 817 phone was in the location of Rodgers's home the day of the shooting. Fegely further testified that the 214 and 817 phones were in the same area of the shooting at the time it occurred.

---

[2] Detective Brent McCoy with the Grand Prairie police department interviewed Rodgers and testified about the phone logs. McCoy testified that Rodgers told him that appellant was on the phone with the stranger wearing a hoodie during the times when the 817 phone was calling the 225 phone. The 225 phone was a "pay-as-you-go kind of phone."

In addition, Belinda Coleman, appellant's girlfriend, testified that the 817 phone was hers but appellant often used it to facilitate drug transactions. Nevertheless, she said that others, including herself, used the phone at various times. However, she admitted she did not call or have reason to call the people the 817 phone had called on the day of the murder, nor had she called the numbers the phone had called multiple times during the month of the murder (such as Demerson), namely appellant's mother and other girlfriend.

After finding appellant guilty of the lesser-included offense of murder, and finding the enhancement paragraph true, the jury assessed punishment and sentenced him to seventy years' imprisonment and a $5,000 fine.

## ANALYSIS

### A. Corroboration of Accomplice Testimony

In his first issue, appellant complains the evidence is insufficient to support his conviction because Rodgers's testimony was not sufficiently corroborated.

### i) Standard of Review

A conviction cannot stand upon accomplice testimony unless corroborated by other evidence or testimony that tends to connect the defendant with the offense. *See* TEX. CODE CRIM. PROC. art. 38.14. To determine if the corroboration was sufficient, we eliminate the accomplice testimony and examine the remaining record to see if non-accomplice evidence tends to connect the accused with the commission of the offense. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). We may consider trial evidence presented by both the State and the defense. *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993). There is no set amount of non-accomplice corroboration evidence that is required; each case must be judged on its own. *Malone*, 253 S.W.3d at 257. The corroborating evidence need not be sufficient by itself to establish the defendant's guilt, nor must it directly link the accused to the crime, as long as it tends to connect

the defendant to the offense. *Id.*; *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997). Even apparently insignificant circumstances may constitute sufficient evidence of corroboration. *Malone*, 253 S.W.3d at 257. Corroboration can come from independent evidence that generally tends to prove the accomplice's version of events, even if it concerns a mere detail as opposed to a substantive link between the defendant and the commission of the offense. *Beathard v. State*, 767 S.W.2d 423, 430 (Tex. Crim. App. 1989). However, the non-accomplice evidence need not corroborate the entire narrative and testimony of the accomplice. *Sheffield v. State*, 371 S.W.2d 49, 53 (Tex. Crim. App. 1962). When there are two permissible views of the evidence, one tending to connect the defendant to the offense and the other not, appellate courts should defer to the view of the evidence chosen by the fact-finder. *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009). Mere presence alone of a defendant at the scene of the crime is insufficient to corroborate accomplice testimony. *Malone*, 253 S.W.3d at 257. However, proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction. *Id.*

**ii)     Analysis**

Appellant argues that once you eliminate Rodgers's testimony, the remaining evidence fails to "tend to connect" him to the murder. In support of this argument, appellant asserts that the "State produced nothing else than the cell phone evidence showing that a particular cell phone, which was not subscribed to Appellant and used by multiple people, was in the general area of the offense location at the relevant time." We disagree.

Here, the evidence presented at trial established that the 817 phone was used by appellant for drug deals although it belonged to Coleman, appellant's girlfriend. The Kik messages showed Rodgers setting up a drug deal for his "uncle," so according to Coleman's testimony appellant

would have used her phone to conduct the deal. Phone records showed the 817 phone making calls to people connected to appellant, namely appellant's mother, second girlfriend, and Demerson, who Coleman admitted she did not call. Though Coleman claimed the 817 phone was used by others as well as appellant, a rational juror could have concluded from this evidence that appellant used the 817 phone the night of the murder.

Further, Fegely testified the 817 phone was in the location of Rodgers's home the day of the shooting. This testimony supports Rodgers's version of events that appellant came and picked him up on May 9, 2016. Fegely also testified that the 214 and 817 phones were in the same area of the shooting at the time it occurred. This testimony also confirms Rodgers's version of the events that he was in the car with appellant on the night of the murder near the location of the shooting.

The non-accomplice evidence and testimony also corroborated nearly all of Rodgers's testimony, including appellant's motive behind the robbery, the existence of the man wearing the hoodie, and the location where appellant disposed of the murder weapon. We conclude the combined force of the cell phone records, the surveillance videos, and the testimony of multiple witnesses tended to connect appellant to the crime. Taken together, and viewed in the light most favorable to the jury's verdict, we hold the non-accomplice evidence and testimony sufficiently corroborated Rodgers's testimony. Therefore, we resolve appellant's first issue against him.

**B.      Exclusion of Evidence**

In his second and third issues, appellant argues the trial court erred by sustaining the State's objection to appellant's line of questioning regarding Anderson's gang membership.

**i)      Additional facts**

Anderson's mother, Harris, testified about her son and his good character. Outside of the presence of the jury, appellant asked Harris about a gang file which the police had on Anderson.

While Harris did not know about the gang file, she did admit to knowing Anderson was in a gang called Gorilla Click. Appellant argued that because Harris had gone into Anderson's good character he was entitled to go into Anderson's gang activity. Additionally, appellant argued that Anderson's gang affiliation was probative to his defense that Anderson was ambushed and murdered due to his gang activity. The State objected under Rules 403 stating that the "prejudicial effect greatly outweighs the probative value." The State also argued that it was "improper under 608 or 609, whichever one of those, because he's trying to go into the specifics of conduct of – to – to try to impeach a witness who ain't even testifying."[3] The trial court sustained the State's objections.

### ii) Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). A trial court abuses its discretion only when its decision falls outside the zone of reasonable disagreement. *Id*. at 83.

### iii) Texas Rule of Evidence 403

In his third issue, appellant contends the trial court erred by excluding the evidence of Anderson's gang affiliation because it was relevant to his defense and its probative value outweighed its prejudicial effect.

Evidence is relevant, and therefore admissible, if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence. TEX. R. EVID. 401. However, trial courts may exclude otherwise relevant evidence if its probative value

---

[3] The State objected under Texas Rules of Evidence 608 and 609. Rule 608 states that a witness's credibility may be attacked or supported by testimony about the witness's reputation for truthfulness or untruthfulness. Rule 609 provides for impeachment by evidence of a criminal conviction. Here, the sought-after testimony from Harris concerned the complaining witness's character or criminal activities, not Harris's credibility or criminal convictions. Accordingly, we limit our review to the State's 403 objection as discussed below.

is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. Evidence is unfairly prejudicial when it has an undue tendency to suggest that a decision be made on an improper basis. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000). A proper rule 403 analysis includes the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004). Gang affiliation is relevant to show a motive for a gang-related crime. *Vasquez v. State*, 67 S.W.3d 229, 239 (Tex. Crim. App. 2002).

In considering the trial court's ruling, we weigh the *Erazo* factors as set forth by the Texas Court of Criminal Appeals. The first factor weighs in favor of admission because the testimony was relevant to appellant's defensive theory to the charged offense. However, the second factor rules in favor of exclusion because evidence of gang membership is highly prejudicial at the guilt-innocence phase of trial, thus having great potential to impress the jury in some irrational but nevertheless indelible way. *See Barlow v. State*, 175 S.W.3d 839, 844 (Tex. App.—Texarkana 2005, pet. ref'd) ("The potential of the evidence to impress the jury in some irrational, but nevertheless indelible way—evidence of membership of the gang is highly prejudicial at the guilt/innocence stage."). Considering the third factor, the time required to develop the evidence or present the testimony is relatively brief and would not weigh against its admission. Lastly, as to appellant's need for the evidence, we consider three questions:

> (1) Does the proponent have other available evidence to establish the fact of consequence that the testimony is relevant to show? (2) If so, how strong is that other evidence? (3) Is the fact of consequence related to an issue that is in dispute?

*See Erazo*, 144 S.W.3d at 495–96. Appellant's defensive theory was that Anderson had been killed by someone else due to his gang affiliation. Detective McCoy testified that detectives had interviewed multiple gang members during their investigation because appellant, Rodgers, and

–10–

Anderson were known to associate with gang members. Harris testified before the jury that Anderson was known as D. Savage or "DSavageGunEmDown" and was a drug dealer who sold drugs out of her house. Harris also testified she saw a car sitting outside of her home days before the murder which caused her to be concerned. Appellant utilized this fact to assert that Anderson had been targeted by a gang. Here, appellant had other available evidence to establish his theory that appellant's murder was due to gang activity. Because a balancing of the factors does not reveal a clear abuse of discretion by the trial court, we conclude the trial court was within its discretion in excluding the line of questioning because its decision is within the zone of reasonable disagreement. *See Henley*, 493 S.W.3d at 92–93.

Furthermore, even assuming the trial court erred, appellant was not harmed because the questions defense counsel would have asked were cumulative of other admitted evidence. *See Potier v. State*, 68 S.W.3d 657, 666 (Tex. Crim. App. 2002) (finding exclusion of evidence relevant to defense did not prevent appellant from presenting a defense). Thus, we would conclude any error in excluding evidence of Anderson's gang affiliation does not constitute reversible error. *See* TEX. R. APP. P. 44.2(b). We overrule appellant's third issue.

### C.    Modification of Judgment

In a cross-point, the State asserts the trial court's judgment incorrectly reflects that appellant pled guilty to the charged offense. Noting the record reflects appellant entered a plea of not guilty, the State requests the judgment be reformed to correctly reflect appellant's actual plea. This Court has the power to modify incorrect judgments when the necessary data and information is available to do so. TEX. R. APP. P. 43.2(b); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, we sustain the State's cross-point and modify the trial court's judgment to accurately reflect appellant entered a plea of not guilty.

–11–

**CONCLUSION**

On the record of this case, we conclude the non-accomplice testimony sufficiently corroborated Rodgers's accomplice testimony and the trial court did not err by excluding testimony about Anderson's gang affiliation or any assumed error was harmless. Thus, we modify the trial court's judgment and affirm as modified.

/David Evans/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
181169F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

RODRICK TERRELL SCOTT, Appellant

No. 05-18-01169-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F17-31737-N.
Opinion delivered by Justice Evans.
Justices Molberg and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to reflect that appellant Rodrick Terrell Scott entered a plea of not guilty to the charged offense.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered February 21, 2020.