**AFFIRMED and Opinion Filed August 16, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-23-00396-CR

**BREYON ALEXANDER PENNY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause No. F20-15502-H**

## MEMORANDUM OPINION

Before Justices Reichek, Goldstein, and Garcia
Opinion by Justice Goldstein

Breyon Alexander Penny appeals his capital murder conviction. A jury convicted appellant, and the trial court sentenced him to life imprisonment. In three issues, appellant argues the evidence is legally insufficient to prove that the underlying murder occurred in the course of a robbery, and State's exhibits 60 and 62 were not relevant and were unfairly prejudicial. We affirm the trial court's judgment.

# BACKGROUND

In July 2021, appellant was charged by indictment with capital murder. Specifically, the indictment charged that, on June 16, 2020, appellant intentionally caused the death of Adarryl Chaney by shooting him with a firearm, and appellant was then and there in the course of committing and attempting to commit the offense of robbery.

The facts in this case are largely undisputed. On June 16, 2020, Chaney was sitting in his parked car outside the Preferred Place Apartments in Dallas a little before midnight. A black Kia pulled up behind Chaney's car, and two men with guns jumped out and approached Chaney's car. One of the men approached the driver's side, and one approached the passenger side. Both men shot into Chaney's car, and the man on the driver's side touched the door handle. The man on the passenger side reached for the door handle. Both men then ran back to the black Kia, which sped away. The driver's side shooter hit Chaney in the left temple, killing him. The passenger side shooter hit Chaney in the right arm. At trial in April 2023, the State introduced a date- and time-stamped surveillance video that recorded the shooting.

Dallas police officer Bradley Tillery testified he responded to the scene of the shooting and saw a bullet hole in Chaney's window and Chaney "slumped over to the side." Tillery opened the door. Tillery thought he had seen oxygenated blood coming out of Chaney's nose "like bubbles," and he thought "there was a chance he

–2–

was breathing." But when Tillery checked for a pulse on Chaney's neck, he did not feel anything. Tillery did not search Chaney's vehicle, but he testified "about $4000" and a backpack containing marijuana were recovered from the vehicle.

Juzari Hall testified he knew appellant as Baamp. The prosecutor showed Hall photographs of four men with guns standing on a black car, and Hall testified he and appellant were two of the men. Hall testified one of the other men in the photos was Zadarron Reedy, but he did not know the fourth man. In the photos, appellant was wearing a black "doo rag" or swim cap, a black shirt with writing on it, and "zebra stripe" underwear visible. Appellant was also wearing shoes Hall identified as "Jordans" that were black and blue.

The prosecutor played the surveillance video of the shooting during Hall's testimony and then showed Hall still photographs from the video. The trial court granted permission for the prosecutor to treat Hall as a hostile witness. Hall testified that he was in the black car at the shooting, Reedy was the shooter on the driver's side of Chaney's car, and appellant was also outside the car with his right arm extended.

Hall testified that, after Chaney was shot and killed, appellant and Reedy "jumped back into the car." Hall then confirmed that, right after the shooting, Hall and appellant went "over to a hotel party" in the same car. Hall testified that surveillance still photos showed appellant wearing a shirt "with a big glittery V on his back" at the hotel.

Dallas police detective Cynthia Kovach testified she did background investigation through social media in this case. Kovach began working her way through the Instagram account of Dominique Robinson, known as "12K," an individual whose name was provided by another detective. Kovach also worked through the social media accounts of Reedy and appellant. Reedy "was pretty easy to find," and Kovach found a photo on Reedy's social media depicting a black Kia Optima and appellant wearing "the doo-rag on his head, the shirt that says 'friends,' the zebra-striped underwear, and the black pants, and the Jordans are black over blue." "[R]ibbons in the background" enabled police to figure out the location depicted in the photo was a U-Haul located at 3900 South Cockrell Hill. The prosecutor introduced into evidence a map showing the locations of the U-Haul, the shooting, and the hotel party, and Kovach agreed that all three locations were "a few blocks from each other."

Kovach looked up the shirt appellant was wearing in the photo and determined the "V" on the shirt stood for "Vlone," a "brand that's very popular with young people." Kovach found a shirt that matched appellant's exactly. Referring to still photos from the video of the shooting, Kovach testified that, on the right side, there was a "male with zebra-striped underwear and shirt going around the car to the passenger side." Kovach searched police databases and found a Kia Optima that "matched exactly to this" and had been stolen earlier on the day of the shooting. The Kia was recovered by police at the hotel where appellant attended the party on the

night of the shooting. Before "anyone realized they had the vehicle used in this," it was released back to the owner. The State also introduced photographs of "Jordan 12" shoes that Kovach agreed were "a fair representation of what [she] was able to locate on [appellant]."

Dallas police detective Scott Sayers testified he extracted videos from Reedy's cell phone, including State's Exhibits 60 and 62. Exhibit 60 was recorded June 16, 2020, at 8:22 a.m. and shows Reedy and appellant during the daytime exhibiting handguns. The prosecutor argued the exhibit showed "the same doo-rag, skull cap or whatever you call it, wave cap, and the Jordans are there that match." Appellant objected to Exhibit 60 on the basis that it was more prejudicial than probative under rule 403 and argued that it was "unduly prejudicial" because it showed appellant with a gun "hours prior" to the shooting. The trial court orally ruled that the probative value outweighed the prejudicial value and admitted the exhibit.

Exhibit 62 from "the same day at 10:35 a.m." showed Reedy sitting in the front passenger seat of the Kia next to appellant with other unidentified individuals in the back seat. Both Reedy and appellant are exhibiting handguns. Appellant made "the same 404(b) objection and 403" and characterized the whole video as "prejudicial in so far as it's an extraneous act not related to the actual incident that we are litigating at Preferred Place." The prosecutor responded that the video specifically placed appellant and Reedy "in a Kia together that day" and

–5–

corroborated Hall's testimony. The trial court overruled appellant's objection and again orally ruled that the probative value outweighed the prejudicial value. Based on the clothing used to identify the men involved in the case, Sayers identified appellant as the man who shot first into Chaney's car as shown in the surveillance video of the shooting.

Dallas police detective Steven Jedlowski testified that, on June 14, 2020, Charles Middleton, a friend of Chaney, was robbed at gunpoint. After the robbery, "Chaney was trying to assist in locating the individuals who robbed" Middleton. In the course of his investigation, Jedlowski developed information that Reedy and Robinson were the ones who "robbed and shot at" Middleton and his associates. The State introduced surveillance video showing Middleton sitting in his vehicle when another car boxed Middleton in. "[M]ultiple individuals" got out of the suspect car, and one approached the driver's side of Middleton's vehicle and one approached the passenger side. "[P]eople were shot," and the gunmen opened the driver's door and passenger door, got the people out of Middleton's vehicle at gunpoint, and drove away. In response to questioning, Jedlowski agreed that, "[i]f the only purpose was to retaliate, they wouldn't walk up and grab the handle and try to get them out" of Middleton's car.

In closing argument, the prosecutor emphasized that Reedy's "involvement in this capital murder" was "undisputed," and it was also undisputed that appellant was "as guilty as" Reedy. The prosecutor described the evidence as showing "the

–6–

progression of the day" during which appellant wore "this distinct clothing all day long."  As to evidence of robbery, the prosecutor argued as follows:

> The Defendant was in the course of committing or attempting to commit the offense of robbery.  Y'all heard a whole bunch of things about retaliation and remuneration for this aggravated robbery that took place two days before, exactly the same way with the same people he was with that night.  We've heard a whole lot about that. Okay.  So in this Charge there are four options: capital murder, murder, aggravated assault and not guilty.  Based on that right there, there are only two choices, and that's capital murder or murder.

Appellant's counsel addressed the evidence of robbery as follows:

> If you watch that video closely, if you watch it closely, as Detective Sayers said yesterday, you can't see the person on the passenger side if they make contact with the car or if they're touching the handle or anything like that.  But we see Zadarron Reedy on the driver's side.  Once you see -- I implore you to watch the video, and you will see what I am telling you is true.  He walks up first.  He stands up on the curb.  He steps off slightly, and he gets back up on the curb, and he loses his balance.  It happens in about a 1-to-2-second instant.  He lunges forward and puts his hand out to brace himself on the car.  Then he regains his balance.  He never tries to open the door.  He wasn't there to rob Mr. Chaney.

> \* \* \*

> You know, you all paid careful attention.  On June 14th of 2020, Zadarron Reedy and Robert Pearce and Dominique Robinson robbed Charles Middleton, took his car.  I told you at the beginning, it's undisputed that Zadarron Reedy killed Mr. Chaney. Zadarron Reedy, from what we saw on the videos, he liked to take out his phone, and the things he writes in his Instagram, he was a maniac; a straight maniac. Fortunately, he's been held accountable.  He's out of the way.  The reason he was there on June 16th of 2020 to find Mr. Chaney is because Mr. Chaney was trying to find out who robbed Mr. Middleton.  Make no mistake about it.  So that X's out the robbery on their indictment. With that gone, there is no capital murder.

–7–

In addition to arguing that the murder was not connected to a robbery, defense counsel argued that appellant was not the passenger side shooter:

> What you don't see is who is on the passenger side. The video is not -- they want to make it -- you know, Detective Sayers wants to come in here and talk to you like this is just some sort of open-and-shut deal; that it's clear cut, you know. The crime scene officer, Fletcher, says she took fingerprint samples off the car; swabbed for DNA. Where is any of that stuff? They don't have it. They likely don't have it because it never existed for anything to show it was Breyon Penny on the passenger side of the vehicle. If they had it, they would bring it to you. But if they didn't submit it because the detective is lazy or incompetent, well, you don't hold that against him. They don't have any physical evidence. They've got some grainy surveillance video. If they thought this video -- if they thought this video was clear cut, they wouldn't have brought you Juzari Hall.

At the conclusion of the evidence, the jury found appellant guilty of capital murder as charged in the indictment. This appeal followed.

## ANALYSIS

### 1. Legal Sufficiency Challenge

In his first issue, appellant argues the evidence is legally insufficient to prove he committed the underlying murder in the course of a robbery.

When we review the sufficiency of the evidence to support a conviction, we uphold the conviction if any rational trier of fact could have found all essential elements of the offense proved beyond a reasonable doubt. *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021). In conducting our review, we consider the evidence in the light most favorable to the verdict. *Id.* The jury is the sole judge of the weight and credibility of the evidence, and it may choose to believe all, some,

–8–

or none of the evidence presented. *Id.* Moreover, the jury may draw reasonable inferences from the evidence, and the evidence is sufficient to support a conviction if the inferences necessary to establish guilt are reasonable based on the cumulative force of all the evidence when considered in the light most favorable to the verdict. *Id.* at 655–56. Circumstantial evidence is as probative as direct evidence in establishing an actor's guilt, and circumstantial evidence alone can be sufficient to establish guilt. *O'Reilly v. State*, 501 S.W.3d 722, 726 (Tex. App.—Dallas 2016, no pet.).

We measure the sufficiency of the evidence against the hypothetically correct jury charge, defined by the statutory elements as modified by the charging instrument. *Edward*, 635 S.W.3d at 656. To convict appellant of capital murder as charged by the indictment, the State had to prove, and the jury had to find, he intentionally committed the murder in the course of committing or attempting to commit a robbery. TEX. PENAL CODE § 19.03(a)(2). A person commits the offense of robbery if, in the course of unlawfully appropriating property with the intent to deprive the owner of property, and with the intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another. *Id.* § 29.02(a)(2). The court of criminal appeals has held that a capital murder is committed "'in the course of committing' an offense listed in section 19.03(a)(2), supra, as conduct occurring in an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of the

offense." *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989) (citing *Riles v. State*, 595 S.W.2d 858, 862 (Tex. Crim. App. 1980)). Proof of a completed theft is not required to establish the underlying offense of robbery; rather, a jury may infer the requisite intent from circumstantial evidence and from the defendant's conduct. *Jones v. State*, No. 05-18-00588-CR, 2019 WL 4071995, at *3 (Tex. App.—Dallas Aug. 29, 2019, pet. ref'd) (mem. op.) (not designated for publication).

Viewing the evidence in the light most favorable to the verdict, as we must, *see Edward*, 635 S.W.3d at 655, we find there is sufficient evidence from which a rational jury could conclude beyond a reasonable doubt that appellant acted in the course of attempting to commit a robbery. *See* TEX. PENAL CODE § 29.01(1); *Riles*, 595 S.W.2d at 862. The jury saw the surveillance video of the shooting in which appellant, wearing the same clothes he wore earlier in the day and later at the party, approaches the passenger side of the car and shoots Chaney first. Reedy, having recorded videos and taken photographs with appellant earlier in the day, also shot Chaney and touched the door handle of Chaney's car. The jury viewed the video, and the jury was free to interpret the events depicted in the video and draw reasonable inferences therefrom. Further, the jury was free to disbelieve appellant's argument that Reedy tripped and grabbed the door handle for support and instead infer that Reedy was interrupted or otherwise deterred in his attempt to enter the car and rob Chaney. Reedy's previous participation in the very similar robbery of Middleton could have led the jury to infer that Reedy planned to rob Chaney the

–10–

same way.  The evidence of appellant's interaction with Reedy on the day of the shooting was extensive: videos taken during the day of the shooting showed Reedy and appellant were together brandishing firearms in the car used in the shooting; Reedy and appellant, along with two other men, were shown in photographs holding firearms and posing with the black Kia used in the shooting; the jury saw video of the shooting itself in which Reedy and appellant approached Chaney's car from both sides with Reedy on the driver's side and appellant on the passenger side, both shot Chaney, and Reedy momentarily grabbed Chaney's car door handle.  From this evidence, the jury could infer that Reedy communicated his intent to rob Chaney to appellant, and both Reedy and appellant had the intent to rob Chaney at the time of the shooting.  Even if there was a motive to retaliate against Chaney, that did not rule out the motive on the part of Reedy and appellant to rob Chaney, given the fact that he had approximately $4000 in cash with him.  The fact that they did not succeed in taking the $4000 did not preclude the jury from inferring the necessary intent to commit robbery.  *See Jones*, 2019 WL 4071995, at *3.  We overrule appellant's first issue.

## 2.  Extraneous Evidence

In his second and third issues, appellant argues State's exhibits 60 and 62 were not relevant and were unfairly prejudicial.  These exhibits were videos showing Reedy and appellant during the daytime exhibiting handguns.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). We reverse a trial court's ruling only if it is outside the "zone of reasonable disagreement." *Id.* If a trial court's decision is correct under any theory of law applicable to the case, we will uphold it. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Evidence is relevant when it has any tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence. TEX. R. EVID. 401. If the evidence provides even a small nudge toward proving or disproving a fact of consequence, it is relevant. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). "A 'fact of consequence' includes either an elemental fact or an evidentiary fact from which an elemental fact can be inferred." *Henley v. State*, 493 S.W.3d 77, 84 (Tex. Crim. App. 2016).

Rule 403 provides that the trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. 403. We evaluate the following four factors when conducting a rule 403 analysis: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *State v. Mechler*, 153 S.W3d 435, 440 (Tex. Crim. App. 2005); *Montgomery*, 810 S.W.2d at

389–90.  In doing so, we balance the inherent probative force of the evidence with the proponent's need for the evidence against any tendency of the evidence to suggest a decision on an improper basis, to confuse or distract the jury from the main issues of the case, or to be given undue weight, and against the likelihood that the presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.  *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).  This balancing test "is always slanted toward admission, not exclusion, of otherwise relevant evidence."  *De La Paz*, 279 S.W.3d at 343.

Here, exhibits 60 and 62 were probative of appellant's association with Reedy, the shooter on the driver's side of Chaney's car, appellant's access to firearms, appellant's clothing as seen in other videos, and appellant's familiarity with the stolen Kia used in Chaney's shooting.  Other than concerns over the possible prejudicial effect of the exhibition of firearms or charges for unlawful carrying of a weapon, the videos lack the potential to confuse or mislead the jury or otherwise impress the jury in some irrational, yet indelible way.  The videos were brief.  And, because appellant's identity was in issue, the State established the need for this evidence to further link appellant with Chaney's murder and attempted robbery.  *See Mechler*, 153 S.W3d at 440.  Thus, we conclude the trial court did not abuse its discretion in determining the probative value of exhibits 60 and 62 was not substantially outweighed by a danger of unfair prejudice, confusing the issues,

–13–

misleading the jury, undue delay, or needlessly presenting cumulative evidence. *See* TEX. R. EVID. 403; *Montgomery*, 810 S.W.2d at 391.

Generally, the State cannot present evidence of prior crimes, wrongs, or other acts to show that a defendant acted in accordance with that character or had a propensity to commit the crime. TEX. R. EVID. 404(b). However, extraneous offense evidence may be admissible if it is relevant for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2). Extraneous evidence may also be admissible to rebut a defensive theory. *De La Paz*, 279 S.W.3d at 344–47.

Through closing argument, appellant maintained that evidence "never existed for anything to show it was Breyon Penny on the passenger side of the vehicle" that belonged to Chaney, and the video of the shooting was "grainy" and not "clear cut." Thus, appellant's identity as the passenger side shooter remained at issue through the conclusion of the guilt/innocence phase of trial. Exhibits 60 and 62 were relevant to establish appellant's identity as the shooter on the passenger side of Chaney's car. Intertwined with evidence of identity, the two exhibits showed appellant was with Reedy, clearly the shooter on the driver's side of Chaney's car, through a significant portion of the day and showed appellant with firearms in the stolen Kia used in the shooting. This evidence also was relevant to show preparation and planning for shooting Chaney and robbing him. *See* TEX. R. EVID. 404(b)(2). Under these circumstances, the trial court did not abuse its discretion in admitting exhibits 60 and

–14–

62 under rule 404(b).  *See Montgomery*, 810 S.W.2d at 391; *De La Paz*, 279 S.W.3d

at 344.  We overrule appellant's second and third issues.

　　　　We affirm the trial court's judgment.


　　　　　　　　　　　　　　　　　　　　　　/Bonnie Lee Goldstein/
　　　　　　　　　　　　　　　　　　　　　　BONNIE LEE GOLDSTEIN
　　　　　　　　　　　　　　　　　　　　　　JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
230396F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

BREYON ALEXANDER PENNY,
Appellant

No. 05-23-00396-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 1, Dallas County, Texas
Trial Court Cause No. F20-15502-H.
Opinion delivered by Justice
Goldstein. Justices Reichek and
Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered August 16, 2024