**Affirmed and Opinion Filed December 11, 2024**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

## No. 05-23-00753-CR

**DARRIN LOPEZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F21-75024**

## MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Carlyle
Opinion by Justice Reichek

Darrin Lopez appeals his conviction for the murder of James Faith. Appellant's sole issue on appeal is that the evidence is insufficient to support the jury's rejection of his claim that his conduct was justified by the law of defense of a third person. We affirm.

### BACKGROUND

At about 7:30 a.m. on October 9, 2020, shortly after James Faith and his wife Jennifer left their Dallas residence to walk their dog, appellant shot James seven times, killing him instantly. Images of appellant's truck at the scene of the shooting

and information extracted from Jennifer's cell phone led to appellant's arrest in Tennessee on January 11, 2021. Appellant was subsequently indicted for James's murder. At trial, appellant admitted he shot James, but asserted his actions were justified because he acted in defense of a third person, Jennifer.

Appellant and Jennifer dated in high school and college but went their separate ways. While going through a divorce and feeling depressed, appellant resolved to reconnect with her. On March 17, 2020, after 30 years without any contact, appellant reached out to Jennifer through LinkedIn. He lived in Tennessee, and she lived in Dallas with James and her adult daughter. Although they would not see each other in person until the day of the shooting, the relationship escalated quickly. The day after they reconnected, appellant told Jennifer he loved her. Jennifer soon told a friend she was having an emotional affair with appellant. From March until the October 2020 shooting and beyond, appellant and Jennifer communicated frequently through phone calls and text and email messages. Although many of the text messages between appellant and Jennifer were deleted and could not be recovered, the State presented over 300 pages of text and email messages at trial.

In the years since they dated, appellant served in the United States Army, including service as a member of the Special Forces. He was deployed to Iraq six times, and on his third deployment, was injured by a truck bomb. He continued to serve after his injury, but was later discharged for medical reasons and was on 100 percent disability. Appellant was diagnosed with and was being treated for traumatic

–2–

brain injury and PTSD. Soon after appellant and Jennifer reconnected, they discussed appellant's traumatic brain injury and military service.

Appellant testified at trial in his defense. He claimed Jennifer deceived him, taking advantage of his brain injury, to make him believe James was abusing her and he needed to save her. In April 2020, Jennifer began to tell appellant stories of abuse. Jennifer sent appellant a text from her phone pretending to be James. "James" told appellant he was going to punish his wife for her emotional affair with appellant. Jennifer then created an email account that appeared to belong to her husband and began forwarding to appellant abusive emails "James" sent her. She also used the email address she created to communicate directly with appellant as "James." Appellant believed James was having Jennifer gang raped on many weekends. In one instance, appellant believed Jennifer was gang raped by five men and was forced to simultaneously write the graphic details of the incident to appellant, in real time. Appellant also testified he believed James had forced Jennifer to perform oral sex in their backyard hot tub and that she lost consciousness and had to be revived through CPR.

Appellant wanted to contact the police, but Jennifer made him promise not to. She told appellant she did not want her daughter to find out what James was doing and also said contacting the police would make the abuse escalate. To help prevent appellant from calling the police, Jennifer purported to put appellant in touch with her friend Rob from work. Although Rob was a real person, Jennifer created a fake

email address for him. Appellant testified that he emailed back and forth with "Rob" and that "Rob" would talk to both Jennifer and James to try to curtail the abuse. From appellant's perspective, Rob's involvement seemed to help. But then in August 2020, the claims of abuse escalated.

On about October 1, 2020, "James" texted appellant his plan to hurt Jennifer on October 9, the 15-year anniversary of the date they met. "James" told appellant he planned a "gang scenario" in which he was going to hold Jennifer under water in a hot tub "to see how many guys she could handle that way." Soon after, Jennifer asked appellant to kill her husband because she was convinced she would die on October 9. When appellant mentioned calling the police, Jennifer brought up her daughter.

Appellant left his home in Tennessee on October 8 and arrived at the Faiths' home in Dallas at about 2:00 a.m. on October 9. The house next door was vacant, and appellant waited there in the backyard, watching the Faiths' house. When he saw James and Jennifer leave home at about 7:30 a.m. to walk their dog, appellant shot James seven times, killing him on the sidewalk. To give Jennifer "plausible deniability," appellant attacked her. He fled when he saw a neighbor approaching and drove straight back to Tennessee.

The jury was instructed on the law of defense of a third person. The charge included instructions on the use of deadly force to protect Jennifer against James's use of deadly force and against his imminent commission of a sexual assault or

–4–

aggravated sexual assault. The jury found appellant guilty, sentenced him to imprisonment for 62 years, and assessed a $10,000 fine.

## APPLICABLE LAW

A person commits murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1). Deadly force used in defense of another is a defense to prosecution for murder if that use of force is justified. *Braughton v. State*, 569 S.W.3d 592, 606 (Tex. Crim. App. 2018). Section 9.31 of the penal code provides that a person is justified in using force against another "when and to the degree the actor reasonably believes force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a). A person is justified in using *deadly force* against another if he would be justified in using force against the other under § 9.31 and when and to the degree the actor reasonably believes the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force or to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery. *Id.* § 9.32(a). A person is justified in using deadly force against another to protect a third person if: (1) under the circumstances as the actor reasonably believes them to be, he would be justified in using force to protect himself against the unlawful force he reasonably believes to be threatening the person he seeks to protect, and (2) the actor reasonably believes that his intervention is

immediately necessary to protect the third person. *Id*. § 9.33; *Henley v. State*, 493 S.W.3d 77, 88–89 (Tex. Crim. App. 2016).

Defense of a third person requires a reasonable belief in the immediate need to act. *Henley*, 493 S.W.3d at 89. Under a claim of defense of a third person, the actor must reasonably believe his intervention is "immediately necessary" to protect the third person. *Id.* The Texas Court of Criminal Appeals has stated that in this context, force that is "immediately necessary" to protect another from a person's use of unlawful force is "force that is needed at that moment—'when a split second decision is required.'" *Id.* The penal code defines "reasonable belief" as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." TEX. PENAL CODE ANN. § 1.07(a)(42). The "reasonably believes" language contains both subjective and objective components. *Lozano v. State*, 636 S.W.3d 25, 32 (Tex. Crim. App. 2021). The defendant must subjectively believe that his use of deadly force was immediately necessary to protect a third person, and that subjective belief must also be objectively reasonable. *See id.*

When a defendant asserts he acted in defense of a third person, he has the burden to produce evidence supporting his defense. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once the defendant produces such evidence, the State has the burden of persuasion to disprove the raised defense. *Id.* The burden of persuasion is not one that requires the production of evidence. *Id*. Rather, the State meets its burden if it proves its case beyond a reasonable doubt. *Id.* When a jury

finds the defendant guilty, there is an implicit finding against the defensive theory. *Id.*

In resolving the sufficiency of the evidence issue here, we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the issue of defense of a third person beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). It is the responsibility of the jury to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia*, 433 U.S. 307, 319 (1979). We will not disturb the jury's rejection of appellant's defense of a third person theory on appeal unless no rational juror could have done so. *Gonzalez v. State*, 680 S.W.3d 358, 377 (Tex. App.—Eastland 2023, pet. ref'd).

## ANALYSIS

In this appeal, appellant contends the evidence is insufficient to support the jury's rejection of his claim that he acted in defense of Jennifer. Appellant argues his conduct was subjectively and objectively reasonable under the circumstances. He contends he had a subjective belief Jennifer was telling him the truth about James's abuse of her and a belief intervention was immediately necessary to save her life on the morning of October 9. He maintains his subjective beliefs were objectively reasonable.

Here, the jury could have rationally determined it was unreasonable for appellant to have believed James was abusing Jennifer and planning to kill her and/or have her gang raped. Appellant did not witness any abuse first hand. The jury could have found it unreasonable for him to believe that James, an IT professional for a major airline, would leave an extensive digital trail of his abuse. Further, there was evidence that during the time Jennifer was claiming she was a frequent victim of gang rape arranged by her husband, she and appellant were having erotic conversations and exploring a dominant-submissive relationship. Jennifer even told appellant she wanted to participate in a rape fantasy. Or the jury could simply have believed that appellant wanted James out of his way so he could have Jennifer to himself. The fact that he fled back to Tennessee after the shooting is inconsistent with his claim he truly believed Jennifer was in danger.

In addition, even if appellant could have reasonably believed James presented a threat to Jennifer on the day of the murder, the jury could have concluded it was not objectively reasonable for him to believe deadly force was immediately necessary at the time of the shooting. Appellant claimed he learned of the events planned for October 9 about a week ahead of time. Instead of calling the authorities, he drove from Tennessee to Dallas to kill James. He arrived in the middle of the night and waited outside the Faiths' home for an opportunity. He shot James as James and Jennifer left their house to take a morning walk. Even if appellant believed James was a monster, at that moment in time, James posed no threat to

Jennifer. James was not going to drown Jennifer during an underwater gang rape while they walked their dog in their neighborhood. Viewing all the evidence in the light most favorable to the prosecution, a rational jury could have found beyond a reasonable doubt the essential elements of murder and found against appellant on the defense of a third person theory. We overrule appellant's sole issue on appeal.

We affirm the trial court's judgment.

/Amanda L. Reichek//
AMANDA L. REICHEK
JUSTICE

230753f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b).



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DARRIN LOPEZ, Appellant

No. 05-23-00753-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District Court, Dallas County, Texas Trial Court Cause No. F21-75024. Opinion delivered by Justice Reichek. Justices Nowell and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 11th day of December, 2024.